## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA

      Plaintiff,

v.                                                       1:23-cr-00748-KWR

SOLOMON PENA,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant Solomon Pena's Motion to Suppress Evidence (Doc. 89).  The Court held an evidentiary hearing on October 19, 2023, and received the official transcript on November 21, 2023.  Having reviewed the pleadings and heard oral argument and testimony, the Court finds that Defendant Pena's motion is not well taken, and therefore, is **DENIED**.

### BACKGROUND[1]

In the days prior to the January 3, 2023, traffic stop, Defendant Solomon Pena, the registered owner of the Nissan Maxima, the vehicle in question, lent his car to Defendant Jose Trujillo.  Subsequently, in the early morning hours of January 3, 2023, Bernalillo County Sheriff's Deputy Officer Jonathan Skroch initiated a traffic stop of the vehicle operated by Defendant Jose Trujillo.  Deputy Skroch initiated the stop based on what he claims to have observed: an improperly displayed and possibly expired registration sticker on Defendant's vehicle.  Doc. 108, 27:7-16.  Defendant Pena was not driving, a passenger in, or located near the vehicle during this incident.

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charges in this Memorandum Opinion and Order.

After Deputy Skroch initiated the stop, Defendant Trujillo pulled the vehicle into a parking spot on private property.  Deputy Skroch asked Defendant Trujillo why he did not have a current registration sticker, to which Defendant Trujillo stated he had borrowed the vehicle.  Doc. 80, Ex. C, at 1:29.  Defendant Trujillo was unable to produce insurance documents, registration, and identification but provided his date of birth, name, and social security number.  Doc. 80, Ex. A; Ex. 1, at 6:03-22.

Upon running Defendant Trujillo's information through the National Crime Information Center ("NCIC") database, Deputy Skroch told Defendant Trujillo there was possibly an active warrant for his arrest regarding a failure to appear for a criminal hearing.  Deputy Skroch explained that if he confirmed it was an active arrest warrant, he would arrest Trujillo.  In case the warrant was active, Deputy Skroch asked Defendant Trujillo if there was anything he wanted from the vehicle. Ex. 1 at 10:56.  Defendant Trujillo replied that there was nothing he wanted to take with him and to "[j]ust tow it, man.  I don't have nobody I can…".  *Id.*, at 11:04.  From this exchange, Deputy Skroch believed there was no one available to pick up the vehicle and that Defendant Trujillo wanted the car towed.  Doc. 108, 36:15-21.  Deputy Skroch confirmed the active warrant and informed Defendant Trujillo that he needed "to inventory [his] car to make sure there's nothing of value in there, though, we have to document that so if the tow company steals anything."  Ex. 1 at 17:20.  Defendant Trujillo stated, "[n]o, it's fine.  I'd rather not."  *Id.*, at 17:28.  Deputy Skroch informed Defendant Trujillo that not inventorying the vehicle was not an option, and the vehicle would be inventoried.  *Id.*, at 17:34.  In response to this, Defendant Trujillo asked, "you're gonna tow it?" to which Deputy Skroch replied, "Yeah."  Defendant Trujillo replied, "[o]kay. Yeah, yeah, go ahead and tow it.  Go ahead and tow it, man."  *Id.*, at 17:38-42.

Deputy Skroch did not contact the complex owner or owner of the car, Defendant Pena, before impounding the vehicle.  Deputy Skroch arranged for the towing of the vehicle and in preparation of impoundment, conducted an inventory search.  *Id.*, at 19:24-22:30.  During the inventory search, Deputy

2

Skroch found two bags of suspected fentanyl pills in the center console, two firearms in the trunk, cash, and hundreds of small baggies.  Ex. A, at 6.  Deputy Skroch arrested Defendant Trujillo, who replied, "I did not condone any search.  I did not condone to anything…No I did not condone to that.  I said, no, you cannot.  I said you could tow it.  I did not say you could do inventory on it."  Ex. 1, at 22:40-44.

Defendant Pena faces several charges, including: (1) conspiracy, in violation of 18 USC § 371; (2-5) interference with federally protected activities, in violation of 18 USC § 245(b)(1)(A) and 2; (6-9) using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, discharging said firearm in violation of 18 USC § 924(c)(1)(A)(iii) and (B)(ii).

Defendant Pena now seeks the suppression of all evidence obtained from the traffic stop and subsequent search.  Defendant Pena asserts that the inventory search violated his Fourth Amendment rights.  He contends that as the vehicle owner, he had a legitimate expectation of privacy in the car and therefore, standing to contest the search.  In addition to the illegal search, Defendant Pena argues he never had possession or knowledge of either the firearms or narcotics found in the vehicle.

## DISCUSSION

### I.     Defendant Pena Lacks Standing to Contest the Vehicle Search

Defendant Pena argues that as the registered owner of the vehicle, despite lending the car to Defendant Trujillo, he still had a "legitimate possessory interest" in the car.  Therefore, he retained an expectation of privacy in the vehicle and its contents and has standing to challenge the search.  The Court disagrees and concludes that Defendant Pena does not have standing to contest the vehicle search.

The Fourth Amendment protects people against unreasonable searches of "their persons, houses, papers, and effects."  U.S. Const. amend. IV; *Soldal v. Cook County*, 113 S. Ct. 538, 544 (1992).   In deciding whether a defendant has standing to seek the exclusion of evidence, two factors are relevant:

first, whether a defendant has manifested a subjective expectation of privacy in the area searched, and second, whether his expectation is one that society would recognize as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *U.S. v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989). The question is whether a defendant had a reasonable expectation of privacy that the Government violated, not whether a defendant owned a particular area or its contents. *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980).

To have standing to challenge the search of a vehicle, a defendant bears the burden to demonstrate that he or she had a "legitimate possessory interest in or lawful control over the car." *United States v. Valdez Hocker*, 333 F.3d 1206 (10th Cir. 2003), citing *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000). To address issues of standing, courts often look to factors such as, "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." *Allen*, 235 F.3d at 489. One who is "merely aggrieved by the introduction of damaging evidence gathered as a consequence" of a search without a Fourth Amendment violation does not have standing. *United States v. Blaze*, 143 F.3d 585, 590 (10th Cir. 1998).

Here, the Court finds Defendant Pena does not have standing to challenge the search of the vehicle. Defendant Pena has failed to establish that he had a legitimate possessory interest in or lawful control over the car at the time of the search. The record does not support a finding that Defendant Pena manifested a subjective expectation of privacy in the vehicle during the search and that his expectation of privacy was objectively reasonable.

It is undisputed that Defendant Pena was the registered owner of the vehicle. In the days leading up to the January 3, 2023, incident and vehicle search, it is also undisputed that Defendant Pena lent Defendant Trujillo his car and therefore, Defendant Trujillo was operating the vehicle with Pena's

4

consent.  Doc. 80 at 7; Ex. 1.  Evidence in a search warrant affidavit confirms that Pena lent his vehicle

to Trujillo for another night, with the only apparent condition being that Trujillo refill the car with

premium gasoline.  Ex. E at 21.  Defendant Trujillo confirmed this arrangement when he later told

Deputy Skroch he borrowed the vehicle from Pena.  Ex. C at 2:14, 15:08-15:50; Ex. 1 at 4:20-21.

While an owner's property interest is certainly to be considered when determining a Fourth

Amendment violation, "ownership alone is not dispositive."  *United States v. Salvucci*, 448 U.S. 83, 91,

100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rawlings*, 448 U.S. at 2561-62.  Here, Defendant Pena

lent his vehicle to Defendant Trujillo with "express permission," and therefore, abandoned any privacy

interest he had in the car.  Doc. 89 at 1; *Blaze*, 143 F.3d at 591.  Defendant Pena did not place any

restrictions on Defendant Trujillo's access to the vehicle with the exception of refilling the car with

premium gasoline.  Furthermore, unlike *Blaze*, Defendant Pena did nothing to limit Defendant Trujillo's

access to the vehicle or separately secure compartments or specific containers within it which might

indicate an intent to retain a privacy interest.  *Id*.  The record does not support a finding otherwise.  Even

if Defendant Pena had the subjective intention of retaining a privacy interest in the vehicle, the record

does not support a finding that he manifested this expectation.  *Allen*, 235 F.3d at 489.  Nor was such a

subjective intention, even if manifested, objectively reasonable.  *United States v. Austin,* 66 F.3d 1115,

1118-19 (10th Cir. 1995).  Regardless of his claimed intent to retain a privacy interest, both this Circuit

and others have held that a vehicle owner abandons his privacy interest in a vehicle and its contents as a

whole when lending it to another absent clear intent to retain a privacy interest.  *See Blaze*, 143 F.3d at

591*; United States v. Burbage*, 365 F.3d 1174, 1179 (10th Cir. 2004); *United States v. One 1986*

*Mercedes Benz*, 846 F.2d 2, 4 (2d Cir. 1988); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444,

449 (9th Cir. 1983).  This Court finds no such clear intent.

Defendant Pena has not met his burden to establish that he had a "legitimate possessory interest in or lawful control over the car." *Valdez Hocker*, 333 F.3d at 1206; *Allen* 235 F.3d at 489.  Pena was not operating, a passenger in, or even located near the vehicle on the night in question.  Furthermore, Defendant Pena relinquished control of the vehicle to Defendant Trujillo for several days.  Defendant Pena has not asserted ownership of either the drugs or firearms seized from the vehicle.  Therefore, he cannot claim to have had an expectation of privacy as to these items despite disclaiming ownership.  Nor has Defendant Pena testified or presented evidence at the suppression hearing as to his expectation of privacy in the vehicle or establishing a legitimate possessory interest.  *Id*.  When Defendant Pena lent Defendant Trujillo the Nissan Maxima for several days without restriction, Pena ceased to have a legitimate possessory interest in and lawful control over the vehicle and its contents.

Therefore, this Court finds that Defendant Pena lacks standing to challenge the stop and subsequent search of the vehicle.  Despite being the registered owner, Defendant Pena abandoned any privacy interest he had in the vehicle when he lent the car to Defendant Trujillo, who had exclusive control and possession of the car.  Other than his post hoc assertion that he is the owner of the vehicle, the record does not support a finding that he manifested a subjective intention to maintain a privacy interest in the vehicle or its contents that was objectively reasonable.

## II.     Alternatively, Defendant Trujillo Had the Authority to Consent and Consented to the Vehicle Impoundment

Defendant Pena has not challenged that Defendant Trujillo had the authority to consent to the vehicle impoundment.  The Government argues that Defendant Trujillo had the authority to consent and consented to the vehicle impoundment and subsequent inventory search.  This Court agrees with the United States.  Therefore, even if Defendant Pena had standing to contest the vehicle impoundment and

search, Defendant Trujillo had the authority to consent and validly consented to both, rendering the evidence discovered lawful.

Defendant Trujillo argues and the United States does not dispute that he has standing to contest the impoundment and vehicle search. The parties agree that Defendant Pena lent the car to Defendant Trujillo, who was driving it on the morning in question. While possession is insufficient to establish a possessory interest, Defendant Pena does not dispute that he had authority to grant possession as the registered owner of the vehicle and that Defendant Trujillo gained possession from him. *See Arango*, 919 F.2d at 445. Defendant Trujillo had a reasonable expectation of privacy in the vehicle and standing to challenge the search. *Valdez Hocker*, 333 F.3d at 1209, *Rubio-Rivera*, 917 F.2d at 1275, *Orrego-Fernandez*, 78 F.3d at 1502, *Soto*, 988 F.2d at 1553.

Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception to the warrant requirement is "a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S.218, 219 (1973). For a search by consent to be valid, the Government has the burden of proving that consent was: (1) unequivocal, "freely and voluntarily given"; and (2) without duress or coercion, express or implied. *Id.* at 222; *U.S. v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). A third party has the authority to consent if he or she has either "[1] mutual use of the property by virtue of joint access, or [2] control for most purposes over it." *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999). Mere submission to lawful authority does not equate to valid consent. *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993). The burden of proving that consent to search was given freely and voluntarily is always on the Government on a motion to suppress. *U.S. v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993).

Courts apply an objective reasonableness test to measure the scope of a person's consent, based on the totality of the circumstances surrounding the search. *United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir. 2004). The Court may exclude unlawfully seized evidence in criminal prosecutions where a defendant's Fourth Amendment rights have been violated. *United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006) (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)).

Given Defendant Pena's authority to grant and granting access of the vehicle to Defendant Trujillo for his mutual use and control for several days, this Court finds Defendant Trujillo had the authority to consent to the tow. *See Rith*, 164 F.3d at 1329.

Defendant Trujillo explicitly requested the towing of the vehicle at multiple points during the stop, which authorized and resulted in a lawful impoundment and inventory search. While awaiting confirmation of the arrest warrant, Deputy Skroch asked Defendant Trujillo what he would like done with the vehicle in the event the warrant confirmed. Ex. 1 at 10:56. Defendant Trujillo stated, "Just tow it, man." Ex. 1 at 11:04; Doc. 108, 36:5-10; 68:8-12. Upon confirmation of the arrest warrant, Deputy Skroch informed Defendant Trujillo an inventory was required to ensure there was nothing of value in the vehicle. Ex. 1 at 17:20. While Defendant Trujillo initially declined the inventory search, Deputy Skroch explained this was not an option; the vehicle would be towed and inventoried. To which, Defendant again replied, "[y]eah, yeah, go ahead and tow it. Go ahead and tow it, man." Ex. 1 at 17:42; Doc. 108, 74:22:23. This explicit consent implicitly authorized the inventory search, the latter being an exception to the search warrant requirement that does not require consent. *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023). Once Defendant Trujillo consented to the impoundment and the vehicle was in lawful police custody, police did not need separate consent to conduct an inventory search. Nor could Defendant Trujillo's post hoc assertion regarding the scope of his consent bifurcate consent as to impoundment versus inventory.

Inventory searches are justified through the need to protect an owner's property in the vehicle, protect police against lost or stolen property, and protect police from danger.  *S. Dakota v. Opperman*, 428 U.S. 364, 369, 373 (1976); *United States v. Kendall*, 14 F.4th 1116, 1124 (10th Cir. 2021).  While Defendant Trujillo contends that if implicit authorization of the inventory search is found, this waives all Fourth Amendment rights in the vehicle, this is contrary to an extensive line of precedent.  It is well established that inventory searches of impounded vehicles, if reasonable and done according to standard police procedures and to protect the car and its contents, are an exception to the Fourth Amendment. *United States v. Chavez*, 985 F.3d 1234, 1242 (10th Cir. 2021), *Braxton*, 61 F.4th at 834, *Opperman*, 428 U.S. at 373, *Kendall*, 14 F.4th at 1124, *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 741 93 L. Ed. 2d 739 (1987); *United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992).  Such searches are permissible under the community-caretaking function if there are public safety concerns.  *Cady v. Dombrowski*, 413 U.S. 433, 447–48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

Here, Deputy Skroch was required to inventory the car according to standard operating procedures for several reasons: to protect any valuables in the vehicle prior to the tow, especially given the high-crime nature of the neighborhood, as well as protect the police department and tow company from liability.  Ex. 1 at 17:20; Doc. 108, 49:22-25; 37:9-13.  As discussed in Section IV, Deputy Skroch conducted the impoundment and inventory search with a valid purpose and pursuant to several Bernalillo County Sheriff's Office ("BCSO") standard procedures: Sections 311-1(A), 311-1(D), 311-2(C-D).  *See* Ex. 2.  Defendant Trujillo had an outstanding arrest warrant and was arrested without the registered owner present.  Given the circumstances and Defendant Trujillo's own statements as to the unavailability of anyone, including the registered owner, to pick up the vehicle, a tow and inventory search were required according to BCSO policy.  Ex. 2; Ex. 1 at 11:04.  Had Defendant Trujillo even withheld his consent, impoundment and an inventory search would have been required under BCSO

policy regardless.  Doc. 108, 76:13-25; 77:1.  Deputy Skroch's conduct during the inventory, i.e., his

failure to wear gloves and his reactions to discovering the evidence in question, reinforces that BCSO

conducted the inventory for the stated reasons and did not even expect to find evidence.  Doc. 108, 43:3-

5; Ex. 1, 19:26-22:12.

While Defendant Trujillo argues that if consent exists, it was not voluntary, this contention is not

persuasive.  The record supports a finding that Defendant Trujillo's consent to impoundment was both

freely and voluntarily given and without express or implied duress or coercion.  *Schenckloth,* 412 U.S. at

222; *Guerrero*, 472 F.3d at 789.  Given Defendant Trujillo's requests to tow the vehicle both before and

after his arrest, the Court finds it was objectively reasonable for the scope of this consent to include

impoundment based on the totality of the circumstances.  Ex. 1 at 11:04, 17:42; Doc. 108, 36:5-10; 68:8-

12; 74:22:23.  Therefore, the Court finds Defendant Trujillo's consent valid.

In sum, this Court finds that Defendant Trujillo validly consented to the vehicle impoundment,

which implicitly authorized the subsequent inventory search.  The inventory search was reasonable and

conducted according to standard police procedures to protect the car and its contents.  As such, both the

impoundment and inventory search of the vehicle were lawful.  Since Defendant Trujillo had the

authority to consent, consented to the impoundment and subsequent inventory search, and the evidence

was validly discovered, Defendant Pena's motion to suppress fails.

## III.    Alternatively, the Impoundment and Inventory Search Were Lawful Under *United States v. Sanders*

Both Defendants Pena and Trujillo contend that the inventory search and impoundment of the

vehicle were unconstitutional under *United States v. Sanders*, which governs the seizure of vehicles

from private property by police.  The United States contends that Defendant Trujillo consented to the

vehicle's impoundment and search and therefore, *Sanders* does not require a different outcome since

consent is an exception to the Fourth Amendment.  However, under *Sanders*, the Government argues the impoundment was reasonable and the result of a standardized policy and non-pretextual community caretaking function.  Therefore, both the impoundment and inventory search were lawful under *Sanders*. This Court agrees with the United States that *Sanders* does not require a different outcome since Defendant Trujillo consented to the impoundment.  However, in the alternative, this Court finds that in weighing the *Sanders* factors, the impoundment and inventory search were lawful.

The Fourth Amendment protects individuals against unreasonable seizures of property. Generally, "seizures of personal property are unreasonable…unless [the seizure is] accomplished pursuant to a judicial warrant issued by a neutral magistrate after finding probable cause."  *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001).  Nonetheless, one exception to the warrant requirement is the "community caretaking function."  *See Opperman*, 428 U.S. at 368.  Under this exception, police officers have the authority to "remove from the streets vehicles impeding traffic or threatening public safety."  *Id.*  Police officers may exercise their discretion to remove a vehicle by towing or impounding it, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."  *See United States v. Sanders*, 796 F.3d 1241, 1244–45 (10th Cir. 2015) (quoting *Bertine*, 479 U.S. at 375).

The Fourth Amendment "imposes heightened requirements on police who seize vehicles from private property."  *See United States v. Woodard*, 5 F.4th 1148, 1152 (10th Cir. 2021) (quoting *Sanders*, 796 F.3d at 1249).  These requirements allow impoundments from private property "only when (1) the car is blocking traffic, (2) the car is posing an imminent threat to public safety, or (3) the impoundment is justified by a standardized policy and a reasonable, non-pretextual rationale of community caretaking."  *Id.*; *see also United States v. Trujillo*, 993 F.3d 859, 867 (10th Cir. 2021) (explaining that

the Tenth Circuit has "upheld impoundment of vehicles parked in private lots and other locations where unoccupied vehicles may still constitute nuisances, although their impact on traffic is questionable").

Under the community caretaking exception, an "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only [1] if justified by both a standardized policy and [2] a reasonable, non-pretextual community-caretaking rationale." *Sanders*, 796 F.3d at 1248; *Trujillo*, 993 F.3d at 871 (noting that *Sanders* addresses impoundments "carried out pursuant to standardized criteria but not justified by [] public safety and traffic control goals"). "The standardized criteria prong ensures that police discretion to impound vehicles is cabined rather than uncontrolled, and the existence of such standardized criteria is the touchstone of the inquiry into whether an impoundment is lawful." *See United States v. Venezia*, 995 F.3d 1170, 1176 (10th Cir. 2021) (internal quotations omitted); *Sanders*, 796 F.3d at 1250.

Under the second prong, a court may consider the following non-exclusive factors from *Sanders* to determine whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale: (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment. *Sanders*, 796 F.3d at 1250; *see also Venezia*, 995 F.3d at 1177.

The Government "bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment." *Sanders*, 796 F.3d at 1244. More specifically, the Government must point to "specific and articulable facts which reasonably warrant an intrusion into the individual's liberty and must show that the government's interest outweighs the individual's interest in being free from arbitrary governmental interference." *United States v. Neugin*, 958 F.3d 924, 931 (10th Cir. 2020) (internal

quotations and alterations omitted).  "Although officers are entitled to some latitude in undertaking their community caretaking role, their actions must be reasonably related in scope to the underlying justification."  *Id*.  (internal quotations omitted) (concluding that the community caretaking exception did not apply when an officer opened and examined a defendant's truck camper where the Government failed to show that "state law or sound police procedure" warranted opening the camper nor how opening the camper was "justified by concern for the safety of the general public").  Additionally, "[t]hough impoundments and inventory searches often occur sequentially, they are subject to different legal standards."  *Sanders*, 796 F.3d at 1244 n.1.  "An inventory search is a routine administrative procedure designed to effect three distinct purposes: protection of the owner's property which may be stored in the vehicle; protection of the police against claims of lost, stolen or vandalized property; and protection of the police from potential danger."  *Lugo*, 978 F.2d at 636–37.

"When the police acquire temporary custody of a vehicle, a warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to standard police procedures and for the purpose of protecting the car and its contents."  *Id*. (emphasis added) (internal quotations omitted); *see also Chavez*, 985 F.3d at 1242.  Therefore, "standardized criteria must regulate inventory searches to ensure that they are not used as a ruse for a general rummaging in order to discover incriminating evidence."  *Lugo*, 978 F.2d at 636–37 (internal quotations omitted).

In weighing the *Sanders* factors, this Court finds the impoundment and inventory search were reasonable and the result of a standardized policy and non-pretextual community function.  This Court finds that BCSO towed the vehicle pursuant to standardized policies, namely, provisions 311-1(A), 311-1(D), and/or 311-2(D).  Ex. 2.  Section 311-1(A) states that vehicles will be towed in instances where a driver has outstanding arrest warrants.  *Id*.  Section 311-1(D) further states that a vehicle will be towed when a driver is arrested or cannot be released to the registered owner.  *Id*.  Section 311-2(D) explains

13

that "[u]pon arrest of the driver of the vehicle, the arresting Deputy may release the vehicle to the verified registered owner of the vehicle if they are present at the time of arrest, otherwise, the vehicle will be towed pursuant to this policy." *Id.*

Here, Defendant Trujillo, the driver, had an outstanding arrest warrant and was arrested without the registered owner present.  Given the circumstances and Defendant Trujillo's own statements as to the unavailability of anyone, including the registered owner, to pick up the vehicle, a tow was required according to BCSO policy.  Ex. 2; Ex. 1 at 11:04.  Deputy Skroch further testified as to his belief that provisions 311-1(A) and 311-1(D) are both applicable to this case.  Doc. 108, 45:12-19.

While Defendant Trujillo contends that 311-2(J) governs this impoundment, this argument is not well taken.  311-2(J) states, "[v]ehicles will not be towed from private property unless needed as evidence, or pursuant to a lawful court order."  Ex. 2.  However, this provision is inapplicable here. 311-2(J) is applicable most often in civil matters, when an individual on private property wants a third party's vehicle towed.  Doc. 108, 46:4-7, 19-25; 129:1-17.  Here, the vehicle was located on private property as a result of actions taken by law enforcement.  Defendant's vehicle was not already parked on private property absent law enforcement action nor was the vehicle parked on Defendant's own property.  Defendant Trujillo has not asserted or explained why 311-1(A), 311-1(D), or 311-2(D) should not control here but rather 311-2(J).  Defendant Trujillo argues that *United States v. Chavez* applies, and the impoundment should be held unlawful.  However, several key differences distinguish this case from *Chavez*, namely, consent was not at issue in *Chavez,* and the impoundment there concerned the defendant's vehicle parked on his own private property.  *Chavez*, 985 F.3d at 1236-38, 1242.  If, as Defendant contends, 311-2(J) were applicable to this case, what would prevent any individual from pulling a vehicle onto any private property to evade possible impoundment and an inventory search by police?

In sum, the Government has pointed to three separate policy provisions requiring impoundment as applied to this case since Defendant Trujillo had an outstanding warrant, was arrested, and the owner of the vehicle was not present.  Defendant Trujillo has directed this Court to 311-2(J), which while prohibiting towing on private property, is only reinforced by case law that has salient differences from this case.  As such, this Court finds that this vehicle was impounded pursuant to standardized policies.

Secondly, Deputy Skroch had a reasonable, non-pretextual community caretaking rationale for towing the vehicle via the *Sanders* factors.  The impoundment here was justified because the vehicle was both a nuisance and at risk of theft or vandalism.

As to the first factor, the vehicle was located on private property, and ordinarily, "[p]ublic safety and convenience are less likely to be at risk when the vehicle is located on private property as opposed to public property." *Venezia*, 995 F.3d at 1178.  However, *Sanders* advised that posing a risk to public safety or impeding traffic can justify impoundment when parked on private property.  *Sanders*, 796 F.3d at 1250.  Given the risk of safety and vandalism, in addition to the impeding of a third-party driveway, it would have been unreasonable for police to have left the vehicle in the driveway overnight.  Like *United States v. Johnson* 734 F.2d 503 (10th Cir. 1984) and *United States v. Kornegay*, 885 F.2d 713 (10th Cir. 1989), here, the vehicle was located on private property and given the possibility of theft or vandalism and the inability to move the vehicle, impoundment was proper.  Sergeant Michael Flavin, who also took part in the traffic stop, noted that the neighborhood in question was a higher crime area with greater incidents of vandalism, theft, and violent crime, as did Deputy Skroch.  Doc. 108, 103:3-14; 49-50:22-25, 1-5.  Since Defendant Trujillo parked the vehicle on private property as a result of law enforcement action and given the circumstances surrounding the stop, this factor weighs in favor of impoundment.

As to the second *Sanders* factor, whether the property owner has been consulted, BCSO did not obtain the consent of the private property owner – the owner of the apartment complex.  However, as the

Court outlined in *Venezia*, the second prong of the *Sanders* test, "goes to the private property owner's enjoyment of his or her private property," i.e., whether the vehicle's presence caused a nuisance. *Venezia*, 995 F.3d at 1179.  For example, the community-caretaking interest may permit officers to impound a vehicle that interferes with a private property owner's use or enjoyment of their property." *Id*.  It would have been unreasonable and possibly unsafe for officers to have sought the complex owner's permission to tow a vehicle he or she was unaware of at 1:30 AM.  Doc. 108, 52:8-18; 83:6-10; 104:1-4.  Leaving the vehicle in the third-party's driveway until at least the next day likely would have interfered with the complex owner's use and enjoyment of his or her property.  At worst, leaving the vehicle overnight could have resulted in theft or vandalism given criminal patterns within the neighborhood.  As such, this second factor weighs in favor of impoundment.

Regarding the third factor, the Court finds there was not an alternative to impoundment.  Officer Skroch noted that several factors point to why there was no choice but to impound the vehicle.  Not only was the vehicle parked unattended in a high crime area in a private driveway, but Defendant Trujillo was not the registered owner of the vehicle, who was not present.  Doc. 108, 80:16-25.  BCSO cannot leave a vehicle parked on private property due to law enforcement contact.  *Id*.  Given the time and location of the vehicle, BCSO expressed concerns as to the safety of the vehicle overnight and the possibility of vandalism.  In such instances, previous impoundments have been upheld.  *United States v. Haro Salcedo*, 107 F.3d 769, 771 (10th Cir.1997); *see also United States v. Johnson*, 734 F.2d 503, 505 (10th Cir.1984).  Defendant Trujillo stated no one was available to pick up the vehicle and requested a tow at several points during the encounter.  Ex. 1, 11:04, 17:42.  To have left the vehicle parked overnight in a private driveway, in a high crime neighborhood, despite the driver requesting a tow more than once, would have been unreasonable.  Therefore, the Court finds there was no alternative to impoundment.

As to the fourth factor, the Court finds the vehicle was implicated in a crime. Deputy Skroch initiated the traffic stop based on a vanity cover that partially obstructed a registration sticker that he believed expired prior to 2020. Doc. 108, 27:7-16. While Defendant Trujillo contends he was never charged with a traffic violation, there is no such requirement under this prong of the *Sanders* test. New Mexico law requires vehicle registration plates to be attached to the rear of the vehicle and clearly visible and legible. NMSA 1978, § 66-3-18. Expired registration plates or validating stickers are not permitted to be displayed; violations constitute a misdemeanor. *Id.* An observation of a violation of this type naturally produces a reasonable, articulable suspicion that a traffic infraction is occurring. Whether or not the vehicle was properly registered at the time of the stop, as Defendant Trujillo argues, is irrelevant. This Court finds the vehicle was implicated in a crime and therefore, this factor weighs in favor of impoundment.

Lastly, as outlined in Section III, this Court has found that the vehicle's driver, Defendant Trujillo, consented to the impoundment by asking for the tow. Under *Sanders*, analysis and application of this factor most often occurs in instances where a driver is objecting to the impoundment of a vehicle. *Sanders*, 796 F.3d at 1244. Here, there is no such objection to the impoundment by Defendant Trujillo but rather consent. Therefore, this Court finds the fifth factor weighs in favor of impoundment.

In sum, while this Court has found that Defendant Trujillo consented to the impoundment and therefore, the subsequent inventory search, in the alternative, under *United States v. Sanders*, the impoundment and inventory search were lawful. Several standardized BCSO policies justified the impoundment and there was a reasonable, non-pretextual community-caretaking rationale for impoundment when weighing the *Sanders* factors. The Government has met its burden that this impoundment satisfies the Fourth Amendment with specific and articulable facts. This Court finds the

impoundment and inventory search lawful.  Therefore, the evidence discovered should not be suppressed.

## CONCLUSION

This Court finds Defendant Pena does not have standing to challenge the vehicle stop and search. Defendant Pena did not manifest a subjective intention to maintain a privacy interest in the vehicle and its contents that was objectively reasonable.  Therefore, Defendant Pena does not have standing to challenge the search and is not entitled to suppression.  *Alderman v. United States,* 394 U.S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176, 174 (1969).  Alternatively, this Court finds that Defendant Trujillo validly consented to the impoundment, which authorized the inventory search.  Under *United States v. Sanders*, Deputy Skroch and BCSO were justified in impounding the vehicle and conducting an inventory search through both a standardized policy and a reasonable, non-pretextual community-caretaking rationale. Therefore, the impoundment and inventory search were lawful, and all evidence found was validly discovered.

**IT IS THEREFORE ORDERED** that Defendant Pena's Motion to Suppress (Doc. 89) is **DENIED**.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE