IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                             1:23-cr-00748-KWR

SOLOMON PEÑA,

    Defendant.

## ORDER ADMITTING IN PART AND EXCLUDING IN PART EXPERT TESTIMONY

THIS MATTER comes before the Court following a *Daubert* hearing held on September 6, 2024. The Court heard the testimony of Defendant's expert, Mr. James C. Fraser-Paige. Defendant offers Mr. Fraser-Paige as an expert in firearms and firearm use.

The Court held the *Daubert* hearing at the Government's request, as the Government argued that the Defendant's notice of expert testimony did not sufficiently provide the expert's opinions. Therefore, the Court does not have specific written objections under *Daubert* to the expert testimony.[1] However, the Court heard oral argument.

Having considered the evidence and oral argument, the Court will admit certain opinions by Mr. Fraser-Paige as expert opinion testimony. As explained below, the Court will carefully limit his opinion testimony.

## BACKGROUND

On May 24, 2023, Defendant Solomon Peña was indicted on numerous charges including conspiracy, in violation of 18 U.S.C. § 371; interference with federally protected activities, in

---

[1] The Court took the *Daubert* issue under advisement at the hearing without objection, and at the hearing no party requested an opportunity to submit written briefing.

violation of 18 U.S.C. § 245(b)(1)(A); aiding and abetting, in violation of 18 U.S.C. § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); aiding and abetting, in violation of 18 U.S.C. § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (B)(ii); and aiding and abetting, in violation of 18 U.S.C. § 2. Doc. 33. On March 26, 2024, in a superseding indictment, Defendant was further charged with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924; and solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373. Doc. 147.

Defendant filed a notice of intent to offer expert witness testimony. Doc. 209. The Government objected to the notice, asserting that it was insufficient in that it did not provide Mr. Fraser-Paige's opinions, but merely the topic of his testimony. Doc. 231. Defendant filed a supplemental notice. Doc. 248. In his supplemental notice, Defendant identifies three general topics Mr. Fraser-Paige will testify about:

> 1. "[T]he weapons . . . seized, cartridges found, and the cartridges not found."
> 2. "[T]he plausibility of the scenario which Demetrio Trujillo is claiming occurred during the Jan 3, 2022, incident."
> 3. "[T]he adequacy of the investigation by law enforcement."

Doc. 248 at 2. The Government objected that this notice was inadequate to properly identify his opinion testimony, and the Government requested a *Daubert* hearing. Doc. 249 at 2. The Court held this *Daubert* hearing to hear the opinions of the Mr. Fraser-Paige in order to make an informed *Daubert* decision.

At the *Daubert* hearing, Mr. Fraser-Paige stated he would offer the following three limited opinions:

- After reviewing certain written documents produced by Albuquerque Police Department, including a ballistics or forensic report, he stated that there was no evidence a 300 Blackout AR-15 style rifle was used in the shootings, as there were no shell casings or projectiles consistent with a 300 Blackout firearm. He did not review any physical evidence.

- In answering a hypothetical regarding shooting an AR-15 style firearm in the cab of a pickup truck, he stated that the firearm would (1) produce a large pressure wave, (2) would cause temporary or permanent hearing loss, and (3) the muzzle flash could have burned one of the occupants of the case. He also states that it would have been difficult to operate an AR-15 style rifle in the cab of the truck, which was occupied by three individuals.

- Finally, he asserts that he did not see any investigative errors by the Albuquerque Police Department.

On September 6, 2024, the Court held a *Daubert* hearing and heard the testimony of Mr. Fraser-Paige as well as oral argument. Defendant requests the Court admit his expert opinion testimony. The Court took this matter under advisement without objection.

## LEGAL STANDARD

Under the Federal Rule of Evidence 702,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., the Supreme Court held that Rule 702 assigns to the district judge a gatekeeping role to ensure that opinion testimony is both reliable and relevant. 509 U.S. 579, 597 (1993); *see also Dodge v. Cotter Corp*., 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline).

The gate-keeping function involves a two-step analysis. First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *See* Fed. R. Evid. 702; *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, if the witness is so qualified, the Court must determine whether the expert's opinions are reliable and reliably applied to the facts of the case, under the principles set forth in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94.

Under *Kumho Tire*, a reliability finding is a prerequisite for all expert testimony in areas beyond the knowledge and experience of lay jurors, not just technical or scientific evidence. When

assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150–51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections raised by the parties. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251.

## DISCUSSION

### I.   Qualifications

Defendant asserts that Mr. Fraser-Paige is qualified to testify as a firearms or firearm use expert. To qualify as an expert witness, a witness must possess, training, knowledge, skill, experience, or education in a specific field so that his or her opinion rests on a substantial foundation. *See* Fed. R. Evid. 702; *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

At issue is not Mr. Fraser-Paige's extensive history with firearms, but whether Defendant has demonstrated that certain proposed opinions fall within the scope of his expertise. *See Conroy*

*v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) ("To qualify as an expert, [a witness] ha[s] to possess skill, experience, or knowledge in the 'particular field' ... or [the field] ha[s] to fall 'within the reasonable confines' of her expertise.").

The Court heard testimony from Mr. Fraser-Paige, and the Court considered his CV, which was admitted into evidence. Mr. Fraser-Paige has a long career in various positions involving firearms. Mr. Fraser page joined the army in 1965, completed basic training, and was later assigned to the Weapons Training Brigade at Ft. Meade, Maryland, where he trained officers in small arms. He instructed in the classroom as well as on the range.

Later, he worked firearm sales, and was a firearm instructor. He asserts he worked as a security guard, a contract officer, and also as a law enforcement officer. As a law enforcement officer, he has served as field training officer and firearm instructor. At various times he was a firearm instructor, assistant armorer, and assistant range master. *See* Doc. 248-1. He consulted with a film production company. He was also an NRA certified basic handgun and shotgun instructor. Mr. Fraser-Paige clearly has extensive experience in firearms use and instructing on how to use firearms.

Mr. Fraser-Paige testified that he can identify the caliber of a cartridge from his practical knowledge and experience. The Government does not appear to dispute this.

Moreover, he obtained several firearm related certifications. He went through basic training in the army. He received reserve officer training, and was licensed and certified to carry a firearm while as a security officer. He was an NRA certified pistol and shotgun instructor.

However, he has never testified as an expert, although he has testified as a lay witness in his role as a law enforcement officer. He has never published in his field. He has never testified as an audiologist, toolmark expert, ballistics expert, and never testified as to the muzzle energy of

a firearm. Defendant has not presented evidence that he is qualified to be an expert in these areas. The record does not show that he has formal education, training, experience, knowledge, or certification in these areas.

Moreover, the Court is concerned whether his opinion is based on sufficient facts and data. Mr. Fraser-Paige testified that he reviewed certain documents in discovery. Specifically, he reviewed the inventory of firearms seized in the traffic stop. He also reviewed a ballistics or forensic report from the Albuquerque Police Department. However, he has not examined any of the physical evidence in this case, such as bullet casings, projectiles, firearms. He did not test any of the firearms recovered in this case.

Defendant has the burden to demonstrate that admission of his expert witness is appropriate. The Court will carefully limit Mr. Fraser-Paige's testimony to the areas within his proffered expertise. As to his first opinion, Mr. Fraser-Paige asserted at the hearing that there is no evidence that a 300 Blackout was used at the shooting. Mr. Fraser-Paige did not examine the physical evidence, but reviewed the reports, in which the officers presumably identified the caliber of ammunition used. Therefore, his opinion appears to be limited to whether the caliber of the shell casings or projectiles as identified by the officers in the forensic report can be used in a 300 Blackout. He has not been qualified as a toolmark or ballistics expert, and may not attempt to match any of the projectiles or casings found to the specific 300 Blackout in evidence. Defendant has not offered any evidence that he is qualified to be an expert in toolmarking (i.e., matching projectiles to specific firearms), ballistics, or projectile comparison.

Moreover, he has not examined the physical evidence, and may not imply that he has reviewed the physical evidence or identified the caliber of ammunition himself. Because he has not reviewed all evidence in the record, he may not opine that there is "no evidence" that the

firearm was fired at a dwelling, as such opinion is not based on sufficient facts or data. Rule 702(c).  However, he may testify whether any of the shell casings identified in the ballistics report can be used in a 300 Blackout.

In his second Opinion, Mr. Fraser-Paige proposes to answer a hypothetical and opine that shooting a 300 Blackout rifle in the cab of a truck would be uncomfortable due to the pressure wave produced, the sound produced, and the muzzle flare. He opines that shooting the rifle in an enclosed space would cause temporary deafness, and potential long term hearing impairment.  He also opines that the muzzle flash could cause burns to an occupant of the vehicle.  Finally, he asserts that it would be difficult to manipulate an AR-15 in the cab of the truck, which had three occupants. Defendant did not demonstrate that Mr. Fraser-Paige has any expert qualifications in toolmarking, ballistics, projectile comparison, or audiology.

Mr. Fraser-Paige is not an audiologist and does not have experience treating or determining the severity of hearing loss or its causes.  He has not studied the acoustics of firearms, the sound waves created by firearms, and never compared sound waves in different environments.  He is not aware of the decibels created by 300 Blackout AR-15 style firearm.  Defendant has not presented any evidence that Mr. Fraser-Paige tested or studied burn marks produced by a 300 Blackout or any other firearm.  Therefore, he is not qualified to opine whether the occupants of the cab would suffer from deafness, temporary or permanent. Nor may he opine on whether they would have suffered burn marks, as that opinion suffers from similar deficiencies as noted above.

In his third opinion, Mr. Fraser-Paige asserts he will testify that he did not identify any fault or flaw in Albuquerque Police Department's forensic investigation. Courts may admit experts based on their experience and training as law enforcement officers. *United States v. Roach*, 582 F.3d 1192, 1206–07 (10th Cir. 2009) (reciting cases of admission of officers as experts).  Although

8

he worked as police officer twenty-five years ago, Defendant did not introduce evidence in the record that he is an expert in forensics, or investigating shootings. Therefore, the Court will exclude this opinion as Defendant has not carried his burden to show that Mr. Fraser-Paige is qualified to offer this opinion.

## II.     Reliability.

The Court must also determine whether Mr. Fraser-Paige's opinions are reliable and reliably applied to the facts of this case. Under Rule 702(c) and (d), the Court must determine whether "the testimony is the product of reliable principles and methods" and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *In re Urethane Antitrust Litig.,* 768 F.3d 1245, 1263 (10th Cir. 2014). "Accordingly, a district court must admit expert testimony as long as it is based on a reliable methodology. It is then for the jury to evaluate the reliability of the underlying data, assumptions, and conclusions." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94.

"[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139. The reliability inquiry "is a 'flexible one.'" *United States v. Baines*, 573 F.3d 979, 989 (10th Cir. 2009) (quoting *Daubert*, 509 U.S. at 594). The *Daubert* list of factors is neither exclusive nor definitive; expert testimony need not meet all of them to be deemed sufficiently reliable. *Id.*; *United States v. Medina-Copete*, 757 F.3d 1092, 1103 (10th Cir. 2014). A court need not discuss all of these factors: "A district court's gate-keeping function is more flexible than that, requiring the court to focus its attention on the specific factors implicated by the circumstances at hand." *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1190 (10th Cir. 2014). The "'reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances.'" *Medina-Copete*, 757 F.3d at 1103 (quoting *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009)).

Where an expert witness's testimony is based on experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

As to his first opinion, the Government has not challenged that Mr. Fraser-Paige can reliably state whether a particular caliber of cartridge identified in the APD report can be used in the 300 Blackout. The Court finds that his opinion is a product of reliable principles and methodologies. Fed. R. Evid. 702(c), (d). However, it does not appear that Mr. Fraser-Paige has reviewed any physical evidence or all discovery. Mr. Fraser-Paige may not opine that there is "no evidence" that a 300 Blackout was used, as that does not appear to be based on sufficient facts or data, or would otherwise be speculative. Fed. R. Evid. 702(b). The Government suggests this

10

opinion is unnecessary as the evidence could be presented on the cross-examination of an officer, but the Court does not yet have the benefit of any such testimony.  A defendant may present his own evidence unless precluded by the Federal Rules of Evidence or law, and the government has not expressly raised a Fed. R. Evid. 403 argument. It would be premature to exclude this evidence on the basis of "needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

As to his second opinion, Mr. Fraser-Paige will opine on a hypothetical regarding shooting a 300 Blackout AR-15 style rifle in the cab of a truck with three occupants.  He opined that (1) shooting the firearm would temporarily deafen the occupants, and potentially contribute to temporary or permanent hearing damage; (2) the muzzle flash may burn the passenger or driver, depending on how close they are to the muzzle; and (3) the firearm would be clumsy to manipulate in the cab of the truck. The record does not support a finding that Mr. Fraser-Paige has reliably applied principles and methodologies relevant to the audiology field, or another field, in determining whether the 300 Blackout, fired in an enclosed space, would cause hearing loss, temporary or permanent. There is nothing in the record to suggest that he has studied or tested the level of decibel required to cause temporary or permanent hearing damage, or has studied the decibel produced by an AR-style rifle, to come to a reliable opinion regarding temporary or permanent hearing loss.  Moreover, none of the five *Daubert* factors here support admitting the evidence. The Court concludes that Mr. Fraser-Paige's testimony regarding temporary or permanent hearing loss is not the product of reliable principle and methods, and his opinion does not reflect a reliable application of the principles and methods to the facts of the case.  Fed. R. Evid. 702(c), (d). Therefore, the Court excludes this expert opinion regarding hearing loss.  As admitted by the Government, Defendant may testify as a lay witness that based on his experience, firing the rifle in an enclosed space would have been loud.

The Court reaches the same result as to his opinion that the muzzle flash could burn an occupant. There is nothing in the record to suggest he has reviewed any data regarding the heat of a muzzle flash, or how close it would need to be to cause a "burn." Moreover, there is nothing in the record to suggest that he has studied muzzle flash burns and reliably applied that knowledge to the facts of this case. Because Defendant did not present evidence in the record that this opinion is based on reliable principles or methodologies and reliably applied to the facts of this case, the Court excludes this opinion as well.  Fed. R. Evid. 702(c), (d).

However, based on his extensive history of using and shooting firearms, and training others on firearm use, he may testify as to the difficulty of manipulating the 300 Blackout in an enclosed space. The Government did not expressly challenge this opinion.

As to his third opinion regarding the quality of the law enforcement investigation, the record at the *Daubert* hearing does not bear out the principles and methods used in arriving at this conclusion, whether those principles or methods are reliable, and whether those principle and methods are reliably applied to the facts of this case.  Therefore, Defendant has not carried his burden of establishing that the Court should admit this opinion under *Daubert.*

## CONCLUSION

The expert opinion testimony of Defendant's firearm expert, Mr. Fraser-Paige, is admitted in part and excluded in part, as explained above. If the parties believe that an instruction is necessary where a witness testifies as both a lay and expert witness, they should propose an instruction.

_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE