IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 23-00748-KWR |
| | ) | |
| **SOLOMON PEÑA**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' PROPOSED JURY INSTRUCTIONS**
**WHERE AGREEMENT WAS NOT REACHED WITH DEFENDANT**

On February 7, 2025, the Parties submitted joint proposed jury instructions, which included those instructions where the Parties were in full agreement (Doc. 329). Pursuant to Pursuant Fed. R. Crim. P. 30 and this Court's Scheduling Order (Doc. 289), the United States hereby submits its requested instructions where the Parties were unable to reach a full agreement. The United States further requests permission to submit such additional instructions as may become appropriate during trial.

1. Pattern Jury Instruction 1.01-1.02 – Preliminary Instructions Before Trial, Note Taking by Jurors

2. Pattern Jury Instruction 2.45 – Using/Carrying a Firearm During Commission of a Crime of Violence (Counts 6, 7 and 8)

3. Pattern Jury Instruction 2.45 – Using/Carrying a Firearm During Commission of a Crime of Violence (Count 9) (modified for "machinegun")

4. Pattern Jury Instruction 2.45.2 – Aiding and Abetting Using/Carrying a Firearm During a Crime of Violence (Count 9) (modified for "machinegun")

5. Pattern Jury Instruction 2.21 – Conspirator's Liability for Substantive Count

6. Proposed Jury Instruction – Solicitation to Commit a Crime of Violence (Counts 11, 12 and 13)

7. *Trent* Instruction – *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014)

8.  *Slater* Instruction – *United States v. Slater*, 971 F.2d 626 (10th Cir.1992)

9.  Pattern Jury Instruction 1.14 – Accomplice–Informant–Immunity

10. Pattern Jury Instruction 1.15 – Accomplice–Co-Defendant–Plea Agreement

Respectfully submitted,

| | |
|---|---|
| ALEXANDER M.M. UBALLEZ | JOHN D. KELLER |
| United States Attorney | Acting Chief, Public Integrity Section |
| | Criminal Division, U.S. Department of Justice |

| | |
|---|---|
| */s/ Jeremy Peña* | */s/ Ryan R. Crosswell* |
| JEREMY PEÑA | RYAN R. CROSSWELL |
| PATRICK E. CORDOVA | Trial Attorney |
| Assistant United States Attorneys | 1301 New York Ave. NW |
| Post Office Box 607 | Washington, D.C. 20005 |
| Albuquerque, New Mexico 87102 | (202) 616-5699 |
| (505) 346-7274 | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I filed the foregoing document electronically through the CM/ECF system, which caused the forgoing to be served on all counsel of record.

*/s/ Patrick E. Cordova*
Patrick E. Cordova
Assistant United States Attorney

REQUESTED INSTRUCTION NO. 1[1]

Members of the Jury:

At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States. I will sometimes refer to the United States as the prosecution. The United States is represented by Assistant United States Attorneys Jeremy Peña and Patrick E. Cordova and Department of Justice Criminal Division Attorney Ryan Crosswell. The defendant, Solomon Peña, is represented by his lawyers Carter B. Harrison IV and Nicolas T. Hart.

The second superseding indictment charges Mr. Peña with Conspiracy, four counts of Interference with Federally Protected Activities, three counts of Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Discharging Said Firearm, one count of Using and Carrying a Machinegun During and in Relation to a Crime of Violence, and Discharging said Machinegun, one count of Felon in Possession of a Firearm and Ammunition, and three counts of Solicitation to commit a Crime of Violence. The second superseding indictment is simply the description of the charges made by the United States against Mr. Peña; it is not evidence of guilt or anything else. Mr. Peña pleaded not guilty and is presumed innocent. He may not be found guilty by you unless all twelve of you unanimously find that the United States has proved his guilt beyond a reasonable doubt.

---

[1] Tenth Circuit Pattern Jury Instructions, Criminal § 1.01-1.02 (2021) (Preliminary Instructions Before Trial) (modified for case specific text, use of "United States" instead of "government", and "Mr. Peña" instead of "defendant").

The first step in the trial will be the opening statements. The United States in its opening statement will tell you about the evidence that it intends to put before you. Just as the second superseding indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

After the United States' opening statement, one of Mr. Peña's attorneys may make an opening statement.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate.

The United States will offer its evidence. After the United States' evidence, Mr. Peña's lawyers may present evidence, but they are not required to do so. I remind you that Mr. Peña is presumed innocent, and it is the United States that must prove the Mr. Peña's guilt beyond a reasonable doubt. If Mr. Peña submits evidence, the United States may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer, or to an answer by a witness. This simply means the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Sometimes we will talk briefly at the bench. But

some of these conferences will take more time so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject. After you have heard all the evidence on both sides, the United States and the defense will each be given time for their final arguments.

The final part of the trial occurs when I instruct you on the rules of law that you are to use in reaching your verdict.

During the course of the trial, I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note-taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

During the course of the trial, you should not talk with any witness or with Mr. Peña or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else. Do not discuss the case with anyone or provide any information about

the trial to anyone outside the courtroom until the verdict is received. Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information or do any research on your own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun, you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Mr. Cordova, you may present the opening statement for the United States.

## REQUESTED INSTRUCTION 2[2]

Mr. Peña is charged in counts 6, 7, and 8 with a violation of 18 U.S.C. section 924(c)(1)(A).

This law makes it a crime to use or carry a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States. Count 6 alleges that Mr. Peña used or carried a firearm during and in relation to his commission of Count 2; Count 7 alleges that Mr. Peña used or carried a firearm during and in relation to his commission of Count 3; and Count 8 alleges that Mr. Peña used or carried a firearm during and in relation to his commission of Count 4.

To find Mr. Peña guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First:*       Mr. Peña committed the crime of interference with federally protected activities as charged in (as appropriate) count 2, 3 or 4 of the second superseding indictment. You are instructed that interference with federally protected activities is a crime of violence;

*Second*:   Mr. Peña used or carried a firearm;

*Third*:     during and in relation to interference with federally protected activities.

If you find the United States has proved these elements beyond a reasonable doubt, you will further be asked to determine whether the firearm was discharged. You will see on the verdict form a question about this issue. You should consider this question only if you have found that the United States has proven Mr. Peña guilty of the offense charged in the relevant count of the

---

[2] Tenth Circuit Pattern Jury Instructions, Criminal § 2.45 (2021) (Using/Carrying a Firearm During Commission of a Drug Trafficking Crime or Crime of Violence) (modified to specify that predicate offense is alleged in multiple counts, to add citation to complete subsection of 924(c), i.e., "924(c)(1)(A)" instead of just "924(c)," and to substitute "government" with "United States" and "defendant" with "Mr. Peña").

indictment. If you find that the United States has proven beyond a reasonable doubt that Mr. Peña discharged the firearm, then you should answer the question "Yes." If you find that the United States has not proven beyond a reasonable doubt that Mr. Peña discharged the firearm, then you should answer the question "No."

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

In determining whether Mr. Peña knowingly used or carried a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The United States must prove a direct connection between Mr. Peña's use or carrying of the firearm and the underlying crime but the crime need not be the sole reason Mr. Peña used or carried the firearm.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive.

## REQUESTED INSTRUCTION NO. 3[3]

Mr. Peña is charged in count 9 with a violation of 18 U.S.C. section 924(c)(1)(A) and (B)(ii).

This law makes it a crime to use or carry a machinegun during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.

To find Mr. Peña guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First:*  Mr. Peña committed the crime of interference with federally protected activities as charged in count 5 of the second superseding indictment. You are instructed that interference with federally protected activities is a crime of violence;

*Second*:  Mr. Peña used or carried a machinegun; and

*Third*:  during and in relation to interference with federally protected activities.

The phrase "during and in relation to" means that the machinegun played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a machinegun when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

---

[3] Tenth Circuit Pattern Jury Instructions, Criminal § 2.45 (2021) (Using/Carrying a Firearm During Commission of a Drug Trafficking Crime or Crime of Violence) (modified to replace definition of "firearm" with definition of "machinegun" from 26 U.S.C. § 5845(b), replace the word "firearm" with "machinegun," to add citation to complete subsection of 924(c), i.e., "924(c)(1)(A)" and "B(ii)" instead of just "924(c)," and to substitute "government" with "United States" and "defendant" with "Mr. Peña")).

A defendant knowingly "carries" a machinegun when he (1) possesses the machinegun through the exercise of ownership or control and (2) transports or moves the machinegun from one place to another.

In determining whether Mr. Peña knowingly used or carried a machinegun during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a machinegun to the crime, the extent to which a machinegun actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A machinegun plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The United States must prove a direct connection between Mr. Peña's use or carrying of the machinegun and the underlying crime but the crime need not be the sole reason the Mr. Peña used or carried the machinegun.

The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

## REQUESTED INSTRUCTION NO.4[4]

For you to find Mr. Peña guilty of violating 18 U.S.C. section 924(c)(1)(A) and (B)(ii) as charged in count 9, it is not necessary for you to find that Mr. Peña personally committed the crime. You may also find him guilty if he intentionally helped someone else commit the crime.

To find Mr. Peña guilty of violating 18 U.S.C. § 924(c)(1)(A) and (B)(ii) as an aider and abettor, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*:    the crime of using or carrying a machinegun during and in relation to a crime of violence as outlined in Instruction **[___]** was committed by someone other than Mr. Peña;

*Second*:    Mr. Peña intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means the United States must prove that Mr. Peña consciously shared the other person's knowledge of the underlying criminal act and intended to help him; and

*Third*:    Mr. Peña knew in advance of the crime of violence that the other person would use or carry a machinegun during and in relation to that crime.

You are instructed that if Mr. Peña knew nothing of the machinegun until it appeared at the scene of the crime of violence and had either (1) completed his acts of assistance, or (2) had

---

[4] Tenth Circuit Pattern Jury Instructions, Criminal § 2.45.2 (2021) (Aiding and Abetting Using/Carrying a Firearm During Commission of a Drug Trafficking Crime or Crime of Violence) (modified to replace the word "firearm" with "machinegun," add citation to complete subsection of 924, i.e., "924(c)(1)(A)" and "B(ii)" instead of just "924(c)," )," to reference the specific count this instructions is applicable to (i.e., count 9), and to substitute "government" with "United States" and "defendant" with "Mr. Peña").

not completed his acts of assistance but had no realistic opportunity to withdraw from the criminal enterprise, the advance knowledge element cannot be met.

### REQUESTED INSTRUCTION NO. 5[5]

If you find Mr. Peña guilty of the conspiracy charged in count 1 and you find beyond a reasonable doubt that another coconspirator committed an offense in counts 2, 3, 4, 5, 6, 7, 8 or 9 during the time Mr. Peña was a member of that conspiracy, and if you find that the offense in counts 2, 3, 4, 5, 6, 7, 8 or 9 was committed to achieve an objective of or was a foreseeable consequence of the conspiracy, then you may find Mr. Peña guilty of count 2, 3, 4, 5, 6, 7, 8 or 9, even though Mr. Peña may not have participated in any of the acts that constitute the offenses described in count 2, 3, 4, 5, 6, 7, 8 or 9.

---

[5] Tenth Circuit Pattern Jury Instructions, Criminal § 2.21 (2021) (Conspirator's Liability for Substantive Count) (modified to substitute "defendant" with "Mr. Peña").

## REQUESTED INSTRUCTION NO. 6[6]

Mr. Peña is charged in counts 11, 12 and 13 with a violation of 18 U.S.C. section 373. This law makes it a crime to solicit another person to commit a crime of violence.

To find Mr. Peña guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*:      Mr. Peña solicited, commanded, induced or otherwise tried to persuade another person to commit a crime of violence, that is the federal felony of Killing a Witness; and

*Second*:      that Mr. Peña intended that another person would commit the crime of violence of Killing a Witness, under circumstances that are strongly corroborative of that intent.

The "federal felony" the United States alleges Mr. Peña intended another person to commit is Killing a Witness, in violation of 18 U.S.C. section 1512(a)(1)(A). This law makes it a crime to kill or attempt to kill another person, with intent to prevent the attendance or testimony of any person in an official proceeding. A person is guilty of 18 U.S.C. § 1512(a)(1)(A) if they: (1) attempted to kill another person; and (2) did so knowingly and with the intent to prevent the attendance or testimony of any person in an official proceeding.[7]

---

[6] 18 U.S.C. § 373; 1 Modern Federal Jury Instructions-Criminal P 19A.01 (2024) (modified to substitute "defendant" with "Mr. Peña"); *United States v. Dvorkin*, 799 F.3d 867, 878 (7th Cir. 2015) (quoting *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010) (stating elements for violation of 18 U.S.C. § 373)); *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (same); *United States v. Buckalew*, 859 F.2d 1052, 1053 (1st Cir. 1988) (same).

[7] 18 U.S.C. § 1512(a)(1)(A); Tenth Circuit Pattern Jury Instructions, Criminal § 2.65 (2021) (Witness Tampering) (modified for 18 U.S.C. § 1512(a)(1)(A) elements).

I instruct you that it is no defense to a prosecution for soliciting a crime that the person solicited could not be convicted of the crime of Killing a Witness because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution or is not subject to prosecution.

It is a defense[8] to the charge of solicitation that Mr. Peña abandoned the crime after having solicited its commission, and that he actually prevented it from occurring. If you find that Mr. Peña has persuaded you, by a preponderance of the evidence, that he voluntarily and completely abandoned his criminal intent, and that he actually prevented the commission of the crime that he had previously solicited, then you must acquit Mr. Peña on the charge of solicitation.  In determining whether a voluntary and complete abandonment or renunciation has occurred, I instruct you that a renunciation would not be voluntary and complete if the evidence showed that it had been motivated in whole or in part by a decision to postpone commission of the crime until another time or to substitute another victim or another similar objective.

---

[8] The United States respectfully requests that the portion of the 18 U.S.C. § 373 instruction regarding the defense of abandonment be stricken before final instruction to the jury if Defendant fails to offer any evidence in support of such a defense.

## REQUESTED INSTRUCTION NO. 7[9]

You have heard testimony as to the manner in which the government conducted its investigation in this case including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or use any particular method. The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of Mr. Peña's guilt.

---

[9] *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014); Originally proposed by the Court (*see* Doc. 263 at 39) (modified to substitute "defendant" with "Mr. Peña").

## REQUESTED INSTRUCTION NO. 8[10]

Members of the jury, you have heard evidence suggesting Mr. Peña may have intentionally attempted to improperly influence, intimidate, or coerce a witness in this matter.

You are instructed that the improper influence, coercion, or intimidation of a witness after the commission or attempted commission of a crime is not sufficient in itself to establish Mr. Peña's guilt; however, it is a fact that, if proved, may be considered by the jury in the light of all other evidence in the case in determining the guilt or innocence of Mr. Peña. Whether evidence of coercion or intimidation of a witness shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury.

---

[10] *United States v. Slater*, 971 F.2d 626 (10th Cir.1992); Originally proposed by the Court (*see* Doc. 263 at 40) (modified to substitute "defendant" with "Mr. Peña").

## REQUESTED INSTRUCTION NO. 9[11]

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement he has with the United States, by his own interest in the outcome of the case, or by prejudice against Mr. Peña. You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

---

[11] Tenth Circuit Pattern Jury Instructions, Criminal § 1.14 (2021) (Accomplice-Informant-Immunity) (omitting instruction on "accomplice" and "immunity," and modified to replace "government" with "United States" and "defendant" with "Mr. Peña").

## REQUESTED INSTRUCTION NO. 10[12]

The United States called as two of its witnesses two alleged accomplices, who were named as co-defendants in the original indictment. The United States has entered into a plea agreement with the co-defendants, providing for the dismissal of some charges and the potential recommendation of a lesser sentence than the co-defendants would otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the United States, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person.

---

[12] Tenth Circuit Pattern Jury Instructions, Criminal § 1.15 (Accomplice–Co-Defendant–Plea Agreement) (modified for case specific text, to state the existence of two alleged accomplices, and to replace "government" with "United States").