## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.                          1:23-cr-00748-KWR

SOLOMON PEÑA,

      Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Counts 1 through 9 of the Superseding Indictment. **Doc. 297.** Having reviewed the pleadings and applicable law, this Court finds that Defendant's motion is not well taken and, therefore, **DENIED**.

### BACKGROUND

On May 24, 2023, Defendant Solomon Peña was indicted on numerous charges including, conspiracy, in violation of 18 USC § 371; interference with federally protected activities, in violation of 18 USC § 245(b)(1)(A); aiding and abetting, in violation of 18 USC § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 USC § 924(c)(1)(A)(iii); aiding and abetting, in violation of 18 USC § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 USC §§ 924(c)(1)(A)(iii) and (B)(ii); and aiding and abetting, in violation of 18 USC § 2. **Doc. 33**. On March 26, 2024, in a superseding indictment, Defendant was further charged with felon in possession of a firearm and ammunition, in violation of 18 USC § 922(g)(1) and 924; and solicitation to commit a crime of violence, in violation of 18 USC § 373. **Doc. 147**. On January 23, 2025, the Government filed a

Second Superseding Indictment.  **Doc. 314.**  The indictment included no new charges and was substantially similar to the first superseding indictment.  ***Id.***  The new indictment includes the allegations that the November 2020, 2022, and 2024 elections in Bernalillo County were mixed elections for both state and federal candidates. **Doc. 314; *see also* Doc. 316-1** (redline version of second superseding indictment).

On December 2, 2024, in the intervening period between the First and Second Superseding Indictments, Defendant filed a Motion to Dismiss Counts 1 through 9 of the Superseding Indictment.[1]  **Doc. 297**.  Defendant argues that interfering with a federal election is not a violent crime and therefore that Counts 6 through 9 do not involve a predicate crime of violence.  **Doc. 297 at 6.**  Defendant also argues that the federal election interference statute is unconstitutional for several reasons, both facially and as applied to Defendant.  ***Id.***  The Government argues that "the Tenth Circuit has stated, and a plain text reading demonstrates, that § 245(b) includes as an element the use of force or threat of force" and that the "charged conduct is within the core of Congress' constitutional authority to regulate elections and interstate commerce and to preserve a republican form of government for the states.  **Doc. 311 at 1**.

## ANALYSIS

A defendant may challenge the sufficiency of an indictment when a "defense, objection, or request" of the court can be determined "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes motions brought because of a "defect in the indictment," such as a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B).

---

[1] On February 4, 2025, the Court held a status conference.  **Doc. 327.**  At both the status conference and in the subsequently filed minutes, the Court made clear that the deadline for outstanding pleadings would be Friday, February 7, at 5:00 pm.  ***Id.***  Defendant filed the Reply on February 7, 2025 at 6:57 pm.  **Doc. 331**.  The Court therefore struck Defendant's Reply as untimely and considers only the Motion and the Response.  **Doc. 334.**

Defendant's arguments fail as a matter of law.  The Government properly interpreted interference in a federal election as a violent predicate act.  Moreover, the federal election interference statute is constitutional, both facially and as applied to Defendant, who interfered with more than merely a state or local election.

> a.  <u>**Defendant's actions as alleged interfered with federal elections**</u>

As a preliminary matter, Defendant's arguments that this matter is better suited for state court because the alleged election interference was in a purely state matter fail.  Congress retains the right to regulate elections of mixed character—where there are federal and local candidates on the same ballot—and the Court therefore makes no ruling on § 245(b)(1)(A)'s constitutionality with respect to purely state or local elections.

Defendant advances several arguments for why this prosecution is unconstitutional, including that this is ostensibly purely a New Mexico state law matter.  For example, Defendant argues, "an alleged shooting of four residences all located in Albuquerque, that belonged to four local politicians, who had served in the past as election officials or candidates for purely local offices, does not burden or affect interstate commerce." **Doc. 297 at 20.**  Essentially, Defendant asks the Court to treat this election as purely state and local, without considering any federal candidate's involvement.  If the Court were to do so, it would be making several novel findings on the constitutionality of the applicability of federal election law to purely state and local elections.

The Court declines to do so.  To decide on the constitutionality of § 245(b)(1)(A) with respect to purely local elections would be unprecedented and unnecessary.  Indeed, the Supreme Court has declined "to decide whether a conspiracy to cast false votes for candidates for state or local office, as opposed to candidates for federal office, is unlawful." *Anderson v. United States*, 417 U.S. 211, 228 (1974).  The same principles apply to other forms of election interference where

the election involves both federal and state or local candidates.  The *Anderson* court wrote that a "single conspiracy may have several purposes, but if one of them—whether primary or secondary—be the violation of a federal law, the conspiracy is unlawful under federal law." *Id.* at 226.  The fact that the "primary motive was to affect the result in the local rather than the federal election has no significance. . . ." *Id.* at 212.

"That [Defendant] may have had no purpose to change the outcome of the *federal* election is irrelevant." *Id.* at 226 (emphasis added).  Interference in an election of mixed character injures the rights of *all* voters, including those in the federal election over which the United States retains jurisdiction.  *Id.*  The Second Superseding Indictment makes clear that the election in which Defendant allegedly interfered involved both federal and state or local candidates.  **Doc. 314**. Indeed, "[i]n Bernalillo Country, the federal, state, and local candidates for public office appeared on the same ballot." **Id. at ¶2**.  The Bernalillo County Board of Commissioners certified on the same date the results of the elections for representatives to the New Mexico House of Representatives in District 11 and District 14 and the results of the elections for representatives to the United States House of Representatives.  **Id. at ¶5**.  That is more than sufficient for the Court to conclude that, like the elections in *Anderson*, the elections at issue involved federal candidates. The Court need not make any ruling on a constitutional right to vote in a strictly local election or on the constitutionality of the applicability of § 245(b)(1)(A) to someone alleged to have interfered with a strictly local election.  § 245(b)(1)(A) punishes interference with federal elections.  The Second Superseding Indictment alleges that Defendant interfered with a federal election, even if Defendant's goal was strictly to upset the state and local election.  **Id.**

The Court therefore makes no ruling on the constitutionality of either statute as applied to a purely state or local matter.  Rather, it finds that the United States properly alleged that the

November 2021 election was precisely the kind of election that *Anderson* contemplated, and that Defendant's motive was to interfere solely with the state results is irrelevant. Defendant's alleged actions interfered with a federal election. That is sufficient to proceed in federal court, even if state law addresses similar (but not identical) offenses.

## II. Section 245(b)(1)(A), which prohibits injury, intimidation, or interference with elections, constitutes a predicate crime of violence.

Defendant's next argument is that because §245(b)(1)(A) prohibits injury, intimidation, *or* interference with elections, it cannot serve as a predicate crime of violence to satisfy the requirements of Counts 6 through 9 of the indictment. Defendant is incorrect—§245(b) requires the "use of force or threat of force," which satisfies the predicate crime of violence requirement.

The Second Superseding Indictment charges Defendant with several counts. **Doc. 314**. Count 1 charges Defendant with interference with a federally protected activity, contrary to 18 U.S.C. §245, using and carrying a firearm during and in relation to a crime of violence, possession a firearm in furtherance of such crime, and discharging said firearm contrary to 18 U.S.C. §924(c)(1)(A)(iii) and (c)(1)(B)(ii), and being a felon in possession of a firearm and ammunition, contrary to 18 U.S.C. §922(g). *Id.* **at ¶16**. Counts 2 through 5 charge Defendant with violations of 18 U.S.C. §245(b). *Id.* **at ¶¶ 20, 22, 24, 26.** Counts 6 through 9 charge Defendant with knowingly using a firearm (6 through 8) and a machine gun (9) during and in relation to a crime of violence. *Id.* **at ¶¶28, 30**. The crimes of violence in question are the charges of election interference in violation of §245(b).

18 U.S.C.§924(c) makes it a crime to use or carry a firearm during and in relation to, or to possess a firearm in furtherance of, a "crime of violence" that can be prosecuted in federal court. 18 U.S.C. § 924(c)(1)(A). The statute defines a "crime of violence" to mean an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or

property of another." 18 U.S.C. § 924(c)(3)(A). The elements clause now stands on its own—the Supreme Court struck down a catchall provision bringing within § 924(c)'s scope those offense that "carrie[d] a substantial risk of" violence sufficient to justify labeling them crimes of violence even though they may not fit within the elements clause. *United States v. Davis*, 558 U.S. 445, 453 (2019) (Invalidating the residual clause as unconstitutionally vague because it required judges to estimate "the degree of risk posed by a crime's imagined 'ordinary case.'").

Defendant asks the Court to find that 18 U.S.C. §245(b)(1)(A) does not constitute a crime of violence and therefore cannot serve as a predicate act for counts 6 through 9 of the indictment. To do so, the Court applies what is known as the "categorical approach" in evaluating the elements—and by extension, requirements—of a crime as defined by its statute. These constitute the minimum elements that a prosecution *must* prove beyond a reasonable doubt, irrelevant of any of the underlying facts of the case.

To determine whether a specific crime constitutes a crime of violence, courts apply the categorical approach. *United States v. Kendall*, 876 F.3d 1264, 1267 (10th Cir. 2017) (citing *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016); *United States v. Taylor*, 843 F.3d 1215, 1220 (10th Cir. 2016)). The categorical approach focuses solely on the "elements of the statute forming the basis of the defendant's conviction"; the specific facts of the defendant's case are irrelevant. *Id.*; *Descamps v. United States*, 570 U.S. 254 (2013). In other words, a court must examine a crime's "imagined ordinary case" when evaluating its elements. *United States v. Davis*, 588 U.S. 445, 453 (2019); *Sessions v. Dimaya*, 584 U.S. 148, 160 (2018).

To determine whether §245(b) requires proof of a crime of violence specifically, the Tenth Circuit requires that the Court examine whether the statute "proscribe[s] conduct which not only (1) naturally involves a disregard of a substantial risk of force against another, but also (2) where

such risk of force arises during the course of committing the offense—a *violent, active* offense." *United States v. Serafin*, 562 F.3d 1105, 1108 (10th Cir. 2009) (citing *Begay v. United States,* 553 U.S. 137 (2008) (Concluding that for an offense to qualify as a violent felony it must involve, among other things, "purposeful, violent, and aggressive conduct.")).  This means that "the risk of force must arise in the course of *committing* the crime and not merely as a *possible result.*"  *Id.* at 1109 (emphasis in original).  Thus, the Court's ultimate question is this: does §245(b) prohibit conduct that "by its nature involve[s] a substantial risk that physical force will occur in the course of committing the offense[?]" *Id.* at 1114.

The Court finds that it does.  18 U.S.C. §245 subjects to criminal charges anyone who:

> [W]hether or not acting under color of law, *by force or threat of force* willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with–
>> **(1)** any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from–
>>> **(A)** voting or qualifying to vote, qualifying or campaigning as a candidate for elective office, or qualifying or acting as a poll watcher, or any legally authorized election official, in any primary, special, or general election;

18 U.S.C. § 245(b) (emphasis added).

In reviewing the elements of this crime, the court must presume that the conviction would "rest[] upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks and brackets omitted). An offense does not qualify as a crime of violence unless "the least serious conduct it covers falls within the elements clause." *Borden v. United States*, 593 U.S. 420, 441 (2021) (plurality opinion).

It is Defendant's contention that the least of the acts criminalized by §245(b) cannot qualify as a crime of violence.  Defendant contends that "an individual may commit the offense through attempted threats," meaning they can take a substantial step towards, but not actually engage in

"the use, attempted use, or threatened use of physical force against the person or property of another." **Doc. 297 at 9**; 18 U.S.C. § 924(c)(3)(A). This is true—a person can take a substantial step towards an attempt without ever using or threatening to use force and that conduct likely would fall outside the scope of §924(c).

However, where the gravamen of Defendant's argument falls apart is the assertion that one can violate §245(b) via an attempt without having "a defendant make threats, engage in force, or attempt to use force." **Doc. 297 at 10**. §245(b) specifically uses "by force or threat of force" to precede the prohibited conduct. 18 U.S.C. §245(b). This suggests that "by force or threat of force" is a requirement for *all* the conduct in the statute, including *attempting* to interfere with a federally protected activity. It is true that one could interfere with an election absent force or threat of force, but that is not the conduct that §245(b) criminalizes. §245(b) specifically criminalizes the use of force or threat of force to interfere with an election—an act of which Defendant is accused. While a person can generally make an attempt without it rising to a violent crime, §245(b) requires that a person who merely attempts to interfere with another for a prohibited reason still must use force or threat of force in the attempt. *See* 18 U.S.C. § 245(b) ("Whoever, whether or not acting under color of law, by force or threat of force willfully injuries, intimidates or interferes with, or attempts to injure, intimidate or interfere with . . . ."). Indeed, as a preliminary matter, the Tenth Circuit has already held that other provisions under §245(b) require as an element the "use of force or threat of force."[2] *United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998) (stating that to prove a felony conviction under § 245(b)(2), the government must show use of force or threat of force). A prosecution therefore needs to prove beyond a reasonable doubt that a defendant used

---

[2] *Woodlee* dealt with a violation of §245(b)(2)(F), which deals with different additional elements, including racialized elements not at issue here. *Woodlee*, 136 F.3d at 1405. However, both §245(b)(1) and (b)(2) both require the actor to have acted "by force or use of force."

force or a threat of force in any of the actions listed in §245(b), including injuring, intimidating, interfering with, or attempting to injure, intimidate, or interfere with a federal election. *Id.*

Thus, the question becomes whether a "threat of force" gives rise to a violent crime. The Tenth Circuit has repeatedly found that to qualify as a violent crime, "the risk of force must arise in the course of *committing* the crime and not merely as a *possible result.*" *Serafin*, 562 F.3d at 1109 (emphasis in original). It would be impossible to satisfy the elements of §245(b) without threatening or using force—two acts that both certainly give rise to a "risk of force."[3] *United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017); *Woodlee*, 136 F.3d at 1406 ("According to this analysis, the bodily injury element of the felony crime is satisfied if injury was a foreseeable result of the . . . intimidation or interference."). *See United States v. Taylor*, 596 U.S. 845, 850 (2022) ("The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or *threatened use of force.*" (emphasis added)).

§245(b)'s text clearly requires a use of force or threat of force, even at its minimum elements. §245(b) therefore qualifies as a crime of violence, as is required by §922(c).

**III.    Defendant's constitutional challenges fail as a matter of law.**

Defendant also raises several constitutional challenges. First, Defendant argues that §245(b)(1)(A) is facially unconstitutional because it exceeds Congress's authority under the

---

[3] Moreover, the Tenth Circuit has distinguished acts where the risk of harm existed but was not a necessary element, thus failing under the categorical inquiry. For example, the Tenth Circuit found that a statute prohibiting pointing a gun at someone for the purpose of discharging the weapon, injuring someone, or whimsy, humor or prank. . . did not qualify as a crime of violence because pointing a gun at someone for the purpose of humor or prank is non-violent." *Kendall*, 876 F.3d at 1271 (discussing *United States v. Titties*, 852 F.3d 1257 (10th Cir. 2017)). The Tenth Circuit then went on to discuss a statute criminalizing assault with a deadly weapon, including an intent to commit assault with a deadly weapon, which it found *did* satisfy the violent crime requirement. *Id.* This is because "[a]n intent to assault is incompatible with jokes or pranks." *Id.* That rationale extends here: the idea that an attempt that necessarily requires "force or threat of force" can somehow be nonviolent and not give rise to a risk of force in its commission strains credulity to its breaking point.

Commerce Clause. Defendant also argues that §245(b)(1)(A) is unconstitutional as applied to him under the Thirteenth, Fourteenth, and Fifteenth Amendments because those amendments require election interference to happen on the basis of race, which is not a fact at issue here. The Court addresses each of Defendant's constitutional challenges in turn and finds that they all fail.

A party may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both. *United States v. Carel*, 669 F.3d 1211, 1217 (10th Cir. 2011). An as-applied challenge acknowledges that a regulation may be generally constitutional but argues that the law is unconstitutional as applied to the specific circumstances of the parties. *Carel*, 668 F.3d at 1217; *N.M Youth Org. v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010). A facial challenge, by contrast, is a "head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Carel*, 668 F.3d 1217. To bring a successful facial challenge, a challenger must establish no circumstances under which a statute would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Facial challenges are disfavored [because] a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotations and citations omitted).

Defendant argues that §245(b)(1)(A) is unconstitutional both facially and as applied under several provisions of the Constitution. First, Defendant argues that Congress exceeded its Commerce Clause authority in passing §245(b)(1)(A), rendering the statute facially unconstitutional. **Doc. 297 at 2**. Next, Defendant argues that §245(b)(1)(A) is not a valid exercise of Congress's power under the Thirteenth, Fourteenth, or Fifteenth Amendments as applied to Defendant because the statute contains no "racial or other discriminatory criteria" that would

ostensibly put the statute within "the scope of Congress's legislative power" under these amendments.  *Id.* **at 23**.  The Court disagrees with Defendant for several reasons.

### a.  Section 245(b)(1)(A) did not Exceed Congress' Authority to Regulate Interstate Commerce.

Addressing Defendant's main argument first, Congress retains the power to regulate elections through interstate commerce, including elections of a "mixed character" in which candidates for both state or local and federal office are on the ballot.

The Commerce Clause provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.  U.S. Const. art. I, § 8, cl. 3.  The Commerce Clause has granted Congress wide latitude to regulate both interstate commerce and activities that burden interstate commerce.  *United States v. Morrison*, 529 U.S. 598, 608 (2000).  This includes "the power to regulate those activities having a substantial relation to interstate commerce, ... *i.e.,* those activities that substantially affect interstate commerce."  *Id*. (citing *United States v. Lopez*, 514 U.S. 549, 558–559 (1995).  Congress may also regulate strictly local, facially non-commercial activities, if it exerts a substantial economic effect on interstate commerce."  *Katzenbach v. McClung*, 379 U.S. 294, 302 (1964); *Wickard v. Filburn*, 317 U.S. 111, 124 (1942) ("Hence the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power."); *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37–38, 57 S. Ct. 615, 624, 81 L. Ed. 893 (1937) ("[I]ntrastate activities, by reason of close and intimate relation to interstate commerce, may fall within federal control. . . .).  In regulating activities pursuant to the Commerce Clause, Congress must only show a rational connection to interstate commerce.  *Id.* at 304; *Gonzales v. Raich*, 545 U.S. 1, 17 (2005); *United States v. Humphrey*, 845 F.3d 1320, 1324 (10th Cir. 2017).

      *i.   Defendant's facial challenge fails because Congress demonstrated a rational connection between election interference and interstate commerce.*

Defendant contends that Congress exceeded its authority to regulate interstate commerce and the channels thereof in passing §245(b)(1)(A) and that the provision is therefore facially unconstitutional. However, Defendant has not demonstrated that there is *no* circumstance in which §245(b) is unconstitutional under the Commerce Clause. *Salerno*, 481 U.S. at 745 (holding that in order to bring a successful facial challenge, a challenger must establish no circumstances under which a statute would be valid); *Wash. State Republican Party*, 552 U.S. at 449.

Importantly, the Tenth Circuit has already discussed another provision of §245(b) and upheld it under the Commerce Clause. *United States v. Lane*, 883 F.2d 1484, 1487–88 (10th Cir. 1989) (discussing 18 U.S.C. §245(b)(2)). There, the Tenth Circuit found that "Congress possessed ample power under the Commerce Clause to enact . . . § 245(b)(2)(C)." *Id.* at 1492–93. Both the Tenth Circuit and at least one other circuit have found that at least §245(b)(2) comes from "comprehensive federal body of civil rights legislation aimed at eradicating discrimination found to have an adverse impact on interstate commerce." *United States v. Allen*, 341 F.3d 870, 882 (9th Cir. 2003) (citing *Lane*, 883 F.2d at 1488–92 (exploring the legislative history of § 245 and noting that the "genesis of § 245 is in section 2 of the Civil Rights Act of 1866")). *Lane* found that Congress can regulate racially based violence related to federally protected activities because it remedies the burden of discrimination on interstate commerce. *Lane*, 883 F.2d at 1492–93.

It stands to reason that the Tenth Circuit's rationale should extend to §245(b)(1)(A). It is not the job of this Court to determine the legitimacy of these intentions, but rather to inquire into the existence of a rational connection between the regulated conduct and interstate commerce. *Raich*, 545 U.S. at 17; *Humphrey*, 845 F.3d at 1324. And Congress does not need to make any

specific findings to legislate. *Lane*, 883 F.2d at 1492 (citing *Perez v. United States,* 402 U.S. 146, 156 (1971)). However, while Congress's main intent was admittedly to remedy racial discrimination in federally protected activities, Congress did also demonstrate a general desire to remedy violent interference with federal activities beyond solely racial discrimination. Indeed, the "purpose of [§245] is to strengthen the capability of the Federal Government to meet the problem of violent interference, for racial *or other discriminatory reasons*, with a person's free exercise of civil rights." S. REP. 90-721 at 1838 (emphasis added). Congress intended to protect *all* citizens' rights to participate in federally protected activities: "Equality is not achieved when we protect only citizens of one religion, or one political affiliation, or one race, or one nationality. Unless *all citizens are protected to the same degree*, we violate the spirit of equal protection." *Id.* at 1845 (emphasis added); *Johnson v. Mississippi*, 421 U.S. 213, 224 (1975) ("Section 245. . . was the antidote prescribed by Congress to deter and punish those who would forcibly suppress the free exercise of civil rights enumerated in that statute.").

There is a rational connection between these goals and interstate commerce. Administering elections, even solely at the state level, has a substantial effect on interstate commerce, including electronic scanners and voting machines, staff, paper ballots, and other supplies for polling places, and postage for mail-in ballots.[4] States (including New Mexico) rely on the interstate mail system both to distribute ballots to and receive ballots from its voters and to permit those overseas to exercise their right to vote. States must distribute ballots to military service members stationed overseas, also relying on the postal system. Political contributions across state lines inherently impact both state and federal elections. *See Buckley v. Valeo*, 424 U.S. 1, 21 (1976). Whether the

---

[4] As the Government rightly points out, election administration is estimated to cost at least $2 billion per year. See Charles Stewart III, The Cost of Conducting Elections, MIT Election Lab (2022), https://electionlab.mit.edu/sites/default/files/2022-05/TheCostofConductingElections-2022.pdf.

donors are out-of-state or local, their money also impacts the channels of interstate commerce. *See United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 580 (1944) (holding states' regulation of insurance business, while "solving regulatory problems of a local character," nonetheless affects interstate commerce); *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 574 (1997) ("A tax on real estate, like any other tax, may impermissibly burden interstate commerce."). It thus follows that when one interferes with the administration of an election or the people's ability to exercise their right to vote, one interferes with interstate commerce. That is all that is necessary to reject a facial challenge—there is a rational connection between interstate commerce and at least some instances of election interference. *Salerno*, 481 U.S. at 745 (a successful facial challenge must establish that there are no circumstances under which a statute would be valid); *Raich*, 545 U.S. at 17 (In regulating activities pursuant to the Commerce Clause, Congress must only show a rational connection to interstate commerce).

Congress properly demonstrated a rational connection between its goals of preventing election interference on more than solely racial discrimination grounds and interstate commerce. Defendant's facial challenge to §245(b)(1)(A) necessarily fails.

> ii. *Defendant's as-applied challenge fails because Defendant interfered with a federally protected activity*

Nor has Defendant demonstrated that §245(b)(1)(A) is unconstitutional as applied to this specific set of facts.

Defendant also attempts to argue that §245(b)(1)(A) is unconstitutional as applied to this case because he is alleged to have interfered with a strictly intrastate affair: an election involving state and local candidates and certified by state and local officials. **Doc. 297 at 16**. This, Defendant argues, places §245(b)(1)(A) in the camp of *U.S. v. Lopez*, in which the Supreme Court invalidated a criminal statute "that by its terms has nothing to do with 'commerce' or any sort of

economic enterprise, however broadly one might define those terms." 514 U.S. 549, 561 (1995); *id.* **at 16**. *Lopez* dealt with a statute that criminalized the possession of a gun in a local school zone. *Id.* at 567. The Court held that possessing a firearm in a local school zone "is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* In other words, Congress had overstepped their Commerce Clause authority because firearms in school zones have *no* effect on interstate commerce, even as an intrastate activity or as an activity in the aggregate. It is on this case that Defendant attempts to hinge his misguided constitutional gripes.

However, as discussed above, Defendant is alleged to have violently interfered in an election of mixed character—that is, an election involving both federal and state or local candidates on the same ballot, the same day, and certified by the same people. **Doc. 314;** *see also* **Doc. 316-1** (redline version of second superseding indictment). While the Supreme Court has held that noneconomic criminal conduct does not affect interstate commerce, criminal conduct that interferes with federal and state elections and the administration of the elections themselves does impact interstate commerce. *C.f. United States v. Morrison*, 529 U.S. 598, 613 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."); *see also Gonzales v. Raich*, 545 U.S. 1, 25 (2005) ("Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." (internal quotations and citations omitted)).

Indeed, regardless of whether they are federal or state, administering elections has a substantial effect on interstate commerce, including in New Mexico. As already discussed, election administration generally relies on the channels of interstate commerce and the outcomes of elections affect interstate commerce. Defendant is alleged to have interfered with an election

in violation of a statute validly passed under Congress's Commerce Clause authority.  It would not be unconstitutional to apply the statute to the exact set of facts §245(b)(1)(A) aims to address, particularly where §245(b)(1)(A) was a valid exercise of Congress's authority.  Defendant's arguments that this was strictly an intrastate matter are irrelevant for two reasons.  Defendant interfered with an election of *mixed* character, and federally protected activities fall squarely within Congress's authority.  *See Katzenbach*, 379 U.S. at 302 (Congress may regulate strictly local activities, if they exert a "substantial economic effect on interstate commerce."); *N.L.R.B.*, 301 U.S at 37–38 ("[I]ntrastate activities, by reason of close and intimate relation to interstate commerce, may fall within federal control. . . .); *Wickard*, 317 U.S. at 124 (same).

Defendant's Commerce Clause challenges, both facial and as-applied, therefore necessarily fail.  Congress acted well within its authority in passing §245(b)(1)(A) and it is not unconstitutional to apply §245(b)(1)(A) to the precise wrong the statute aims to right.

### b.  The Elections Clause authorizes §245(b)(1)(A)

Even if Congress did not have the power to pass §245(b)(1)(A) pursuant to the Commerce Clause, Congress retained the power to do so via the Elections Clause.  Furthermore, Congress properly invoked that authority in passing §245(b)(1)(A).

The Elections Clause provides that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; *but the Congress may at any time by Law make or alter such Regulations*, except as to the Places of chusing Senators."  U.S. Const. art. I, §4, cl. 1 (emphasis added).  It is a longstanding tradition that Congress may step in to regulate elections where necessary.  *See e.g.*, *Cook v. Gralike*, 531 U.S. 510, 522–23 (2001) ("[T]he Constitution delegated to the States the power to regulate the 'Times, Places and Manner of holding Elections for Senators and Representatives,' subject to a grant of

authority to Congress to 'make or alter such Regulations.'"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801–02 (1995); *Rucho v. Common Cause*, 588 U.S. 684, 685 (2019); *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *Ex Parte Yarborough*, 110 U.S. at 662; *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) ("The text makes equally clear, however, that Congress can step in, either making its own regulations that wholly displace state regulations or else modifying existing state regulations."). This includes mixed elections. *Anderson*, 417 U.S. at 225; *United States v. McCranie*, 169 F.3d 723, 727 (11th Cir. 1999); *United States v. Bowman*, 636 F.2d 1003, 1010 (5th Cir. 1981). Permissible regulations include those that seek to "prevent violence, fraud, and corruption." *Bowman,* 636 F.3d at 1009.

Congress permissibly invoked its Elections Clause authority in passing §245(b)(1)(A) by flagging its authority "to punish private interference with voting in Federal elections." S. REP. 90-721, 1841–42. The very "purpose of [§245(b)(1)(A)] is to strengthen the capability of the Federal Government to meet the problem of violent interference, for racial or other discriminatory reasons, with a person's free exercise of civil rights." *Id.* at 1838. It is easy to discern Congress's intent that this free exercise of civil rights includes voting. One need only look at its decision to cite repeatedly to *Ex Parte Yarbrough*, 110 U.S. 651 (1884), which upheld a criminal law protecting voters in federal elections from violence under the Elections Clause. *See e.g.*, S. REP. 90-721 at 1842. Criminalizing election interference, violent or otherwise, falls squarely within Congress's grant of authority under the Election Clause. *Smiley v. Holm*, 285 U.S. 355, 366 (1932) (finding that the election regulations over which Congress retains authority would be "nugatory if they did not have appropriate sanctions in the definition of offenses and punishments."); *see also Harkless v. Brunner*, 545 F.3d 445, 454 (6th Cir. 2008) ("The Elections Clause also gives a broad grant of power to Congress, allowing it . . . to remedy any wrongdoing.); *United States v. Smilowitz*,

974 F.3d 155, 159 (2d Cir. 2020) ("The Supreme Court has recognized that if Congress does not "have the power to protect the elections on which its existence depends.... it is left helpless before the two great natural and historical enemies of all republics, open violence and insidious corruption."). Whether or not §245(b)(1)(A) is a valid statute pursuant to the Commerce Clause is indeed arguably irrelevant; the Elections Clause clearly authorizes the language.

Congress therefore once again acted constitutionally pursuant to its authority under the Elections Clause in passing §245(b)(1)(A). The Court will not disturb a statute that is well within Congress's constitutional authority.

### c.  Defendant's remaining constitutional arguments are unavailing.

Finally, Defendant holds §245(b)(1)(A) out as unconstitutional under the Thirteenth Amendment, as well as the Fourteenth and Fifteenth Amendments. The Court addresses Defendant's arguments in two parts below.

#### i.  §245(b)(1)(A) does not implicate the Thirteenth Amendment, nor did Congress invoke it.

Defendant argues that §245(b)(1)(A) is an invalid exercise of the Congress's legislative power under the Thirteenth Amendment because of the lack of "any racial or other discriminatory criteria. . . ." **Doc. 297 at 23**. In doing so, Defendant relies on *U.S. v. Nelson*, which upheld §245 (b)(2) as a valid exercise of Congress's Thirteenth Amendment legislative power and declined to address its validity under the Commerce Clause or Fourteenth Amendment. *United States v. Nelson*, 277 F.3d 164, 175 (2d Cir. 2002).[5]

---

[5] The Thirteenth Amendment generally prohibits slavery and allows Congress to enforce that prohibition via appropriate legislation. U.S. Const. amend. XIII. "The Supreme Court . . . clarified . . . Congress's enforcement power under Section 2 also extends to eradicating slavery's lingering effects, or at least some of them." *United States v. Hatch*, 722 F.3d 1193, 1197 (10th Cir. 2013).

However, the text of (b)(1)(A) and (b)(2) are fundamentally different in a key way: only (b)(2) criminalizes actions that have a discriminatory intent.  18 U.S.C. § 245(b)(2) (criminalizing injuring, intimidating, or interfering with "any person because of his race, color, religion or national origin. . . ."); *United States v. Hatch*, 722 F.3d 1193, 1207 (10th Cir. 2013) (discussing how §245(b)(2)(B) "criminalizes racially motivated violence intended to dissuade the victim from 'participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof.'").   §245(b)(1)(A), on the other hand, *generally* criminalizes interference with federally protected activities, regardless of motive.  *See Johnson*, 421 U.S. at 224; 18 U.S.C. § 245(b)(1) (criminalizing injuring, intimidating, or interfering with "*any person*" participating in the list of enumerated federally protected activities (emphasis added)).   Indeed, the legislative history indicates that Congress did not rely on the Thirteenth Amendment at all.  *See generally* S. REP. 90-721.  Nor does Defendant point to any authority indicating that a federal court, in the Tenth Circuit or elsewhere, has even addressed the supposed constitutional conflict between this specific provision and the Thirteenth Amendment.[6]

The general free exercise of civil rights does not automatically implicate the Thirteenth Amendment.  §245(b)(1)(A) does not deal crimes containing a racial or otherwise discriminatory element.  Congress passed § 245 generally "to deter and punish those who would forcibly suppress the free exercise of civil rights enumerated in that statute."[7] *Johnson v. Mississippi*, 421 U.S. 213,

---

[6] *Nelson*, unlike this case, involved the Government specifically advancing arguments under the Thirteenth Amendment.  277 F.3d at 174 ("At various points in this litigation, the government has argued that the grant of authority on which the constitutionality of § 245(b)(2)(B) is founded appears in Section Five of the Fourteenth Amendment, in the Commerce Clause, and in the Thirteenth Amendment.").  Only the Defendant has brought up the Thirteenth Amendment—the Government made no such invocation in its briefing.

[7] It is true that the predominant goal of the legislation as a whole was to specifically deter race-based civil rights violations.  Indeed, "[t]he initial version of § 245. . . proscribed interference with various rights *only if the interference, intimidation, or injury was motivated by the victim's race, color, religion or national origin.*"  *United States v. Pimental*, 979 F.2d 282, 285 (2d Cir. 1992) (emphasis added).  However, that was only the initial version—the final version and the *binding* version of §245(b)(1)(A) criminalizes the forcible suppression of "the free exercise of civil rights," regardless of motive.  *See Johnson*, 421 U.S. at 224.

224 (1975).  As discussed at length above, §245(b)(1)(A) falls comfortably within Congress's powers under the Commerce Clause and the Elections Clause.  *C.f. Nelson*, 277 F.3d at 175 (declining to address Commerce Clause and Fourteenth Amendment arguments where §245(b)(2) falls "comfortably within" Congress's powers under the Thirteenth).

The Court declines to address Defendant's Thirteenth Amendment arguments because §245(b)(1)(A) does not implicate the Thirteenth Amendment and it falls squarely within Congress's legislative authority under the Elections Clause and Commerce Clause.

   *ii.  §245(b)(1)(A) does not implicate the Fourteenth or Fifteenth Amendments.*

Finally, Defendant argues that because he is a private citizen, §245(b)(1)(A) is unconstitutional under the Fourteenth Amendment, which prohibits only state action, under what is known as state action doctrine.[8]

   The Second Circuit offers a salient description of the state actor doctrine:

> The State Action Doctrine refers to the constitutional guarantee under Section One of the Fourteenth Amendment that "no State shall deprive any person of 'life, liberty, or property, without due process of law,' nor deny to any person 'equal protection of the law,'" *Morrison,* 529 U.S. at 619, 120 S.Ct. 1740 (internal citation omitted), and requires that the wrongful conduct of private individuals have some connection to state authority to be actionable under the Fourteenth Amendment.

*United States v. Nelson*, 277 F.3d 164, 175 n. 9 (2d Cir. 2002).

This includes preventing states from imposing literacy tests as a prerequisite for voting, *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), voting rights requirements meant to remedy race-based discrimination, *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), and intentional discrimination in jury selection, *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1879).  *Morrison*, 529 U.S. at 626.

---

[8] Defendant invokes the Fifteenth Amendment but makes no argument relating to it beyond citing its text. **Doc. 297 at 24**.  The Court therefore declines to address it in its entirety.

Defendant argues that state action doctrine condemns §245(b)(1)(A).  However, the Tenth Circuit says otherwise.  In contemplating §245 as a whole, the Tenth Circuit has discussed at length §245's legislative history and its basis in the *Commerce Clause*.  *United States v. Lane*, 883 F.2d 1484, 1491 (10th Cir. 1989).  The Tenth Circuit found it "less clear as to whether Congress also may have relied on the Fourteenth Amendment in addition to the Commerce Clause. . . ."  *Id.* at 1492.  However, as *Lane* rightly points out, it was the Commerce Clause that both Congress and the prosecution invoked.  *Id.* ("We do not need to resolve this uncertainty, however, or express an opinion on whether Congress' Fourteenth Amendment power would support § 245(b)(2)(C). Since the Commerce Clause power was invoked and is sufficient for our decision, we have considered it alone.").  There is little reason to wade into the merits of issues the Tenth Circuit has declined to touch where "Congress possessed ample power under the Commerce Clause" to enact §245(b)(1)(A).  *Id.* at 1492–93.

Defendant's remaining constitutional arguments are thus unavailing.  The Court declines to find §245(b)(1)(A) unconstitutional under any of the provisions which Defendant advances.

## CONCLUSION

Defendant's arguments that the Second Superseding Indictment is deficient fall for several reasons. Defendant's Motion to Dismiss Counts 1 through 9 of the Indictment (**Doc. 297**) is **DENIED**.

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

21