IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                       1:23-cr-00748-KWR

SOLOMON PEÑA,

    Defendant.

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A MISTRIAL**

THIS MATTER comes before the Court upon Defendant's Motion for a Mistrial following objections to changes to one of the Court's proposed jury instructions at the charge conference. Having reviewed the applicable law, the Court finds that Defendant's motion is not well taken and is therefore **DENIED**.

## BACKGROUND

The facts surrounding this motion for a mistrial stem from the Court's Third Sealed Proposed Instructions and its associated deadlines. **Doc. 347**. On March 5, 2025, the Court filed its third iteration of court proposed jury instructions and set the deadline for objections for March 12, 2025, at 11:59 p.m. *Id.* at 1. These instructions were largely based on the parties' joint proposed instructions and their individually proposed instructions. The Government filed a timely response; Defendant did not. **Doc. 352**.

Trial began on March 10, 2025. By March 17, 2025, all parties agreed that the case would likely go to the jury the next day. The Government indicated that it had additional responses to the jury instructions and the Court set the deadline for filings to be 7 p.m. that evening. Both parties filed additional proposed jury instructions by the deadline. **Doc. 353** (Proposed Jury

1

Instructions by Solomon Pena); **Doc. 354** (USA's Additional Response To Court's Third Proposed Jury Instructions). Defendant filed Objections to the Government's Last-Minute Jury-Instruction Modifications, **doc. 355**, at 2:30 a.m. on March 18. The Court incorporated most or all of each party's timely-filed proposed instructions before the close of evidence.[1]

Specifically, there is a dispute about what has become known as Instruction 11. This instruction was originally jointly proposed by the parties. In its March 17 request, the Government asked the Court to include additional language in the instruction to give a complete picture of the scope of liability under 18 U.S.C. §2. The instruction, which was the Tenth Circuit pattern instruction, only included language from 18 U.S.C. §2(a). For whatever reason, the pattern instruction does not include language from the other half of the statute, 18 U.S.C. §2(b). The Government therefore proposed an instruction that included both halves of the statutes. **Doc. 354 at 5**. In the Defense's early morning response, it objected on the grounds that this change would violate Federal Rule of Criminal Procedure 30 and constituted unfair surprise and would result in due process violations. **Doc. 355 at 2–3**. The Court put out its initial thoughts in the morning after viewing the proposed changes and Defendant's 2:30 a.m. response, but did not docket any specific document as the Court had only had a few hours to review the limited briefing. At no point did the Court indicate that its decision was final or would be docketed before the jury instruction conference.

In the Court's fourth iteration of the jury instructions, it tentatively rejected the Government's proposed changes. **Doc. 356 at 27–28** (version 4). The Court held two conferences on March 18 to resolve these newly raised issues. At the first, it questioned the United States

---

[1] Specifically, Defendant proposed adding the names of testifying witnesses to the prior inconsistent statement instruction, **doc. 356 at 60**, and to the drug abuser instruction, **doc. 356 at 71**. After the jury instruction conference, the Court agreed to both proposed changes.

heavily about its last-minute change and its justifications for doing so. The United States argued that the request came within the timeframe of Rule 30, that this had always been a theory of the case and that the entirety of 18 U.S.C. § 2 was charged throughout the indictment, and that the jury was entitled to hear the full statute. Defendant also had an opportunity to object, and did so, arguing unfair surprise and violations of Rule 30. After carefully considering the parties' arguments, the Court proposed Instruction 11, which accounted for (but did not identically incorporate) the United States' request for additional language, but did not remove the §2(a) language. **Doc. 357 at 23–25** (version 5). After hearing full argument from each party on the issue, the Court decided that its initial due process concerns had been alleviated, and that leaving the instruction as is would be a gross misstatement of the statute charged eight separate times in the indictment.

At the second conference, the United States requested that the Court remove the §2(a) language for clarity for the jury, which the Court denied. Defendant objected once again, arguing that the United States proceeded in bad faith and that Defendant would have materially changed the way he presented his case had he known that the United States was proceeding under a §2(b) theory. To give Defendant time to adjust its closing arguments in light of the new instruction, the Court elected to delay closing arguments until March 19, 2025. Defendant moved for a mistrial on the grounds that including the language constituted manifest injustice and that he had been denied a fair trial.

## LEGAL STANDARD

In considering whether to grant a mistrial, district courts must determine whether an error occurred and whether the error impaired the defendant's right to a fair and impartial trial. *United States v. Stiger,* 413 F.3d 1185, 1194 (10th Cir. 2005); *United States v. Martinez*, 455 F.3d 1127,

1129 (10th Cir. 2006).  District judges retain broad discretion surrounding whether to declare a mistrial and may consider many factors in its decision.  *United States v. Williams*, 400 F. App'x 401, 405 (10th Cir. 2010); *Walck v. Edmondson,* 472 F.3d 1227, 1236 (10th Cir. 2007).  A court should generally grant a mistrial where to allow the trial to continue would cause manifest injustice to the defendant.  *Williams*, 400 F. App'x at 405; *United States v. Trujillo*, 578 F.2d 285, 287 (10th Cir. 1978); *United States v. Smaldone*, 485 F.2d 1333, 1349 (10th Cir. 1973).

## ANALYSIS

The Court considered several factors in addressing Defendant's motion.  Ultimately, there would be no manifest injustice in allowing the trial to continue.

### I.    Rule 30 allows for instructions to be proposed until the close of evidence

First, the text of Federal Rule of Criminal Procedure 30 allows for the filing of jury instructions up until the close of evidence, even if the court has otherwise set deadlines.

Rule 30 provides that "[a]ny party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made *at the close of the evidence or* at any earlier time that the court reasonably sets." Fed. R. Crim. P. 30 (emphasis added).  Based on the text of Rule 30 alone, the Court may allow jury instructions up to the close of evidence, even where there was some other deadline.  The parties here both filed their final set of instructions on March 17.  **Doc. 352; Doc. 353**.  However, the case did not reach close of evidence until the morning of March 18.  Allowing the amendment to Instruction 11 is within the scope of Rule 30, even if the requested change happened late.

A defendant is nevertheless prejudiced by a strict observance of Rule 30 where "the party was unduly and unfairly prevented from making his argument to the jury or was substantially misled by the court's actions or inaction in formulating his arguments." *Whitlock v. United States*,

4

429 F.2d 942, 946 (10th Cir. 1970); *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988) (agreeing with the Tenth Circuit's explanation "that a district court's failure to comply with Rule 30 prejudices a party if the party was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments."). Where a party has "little opportunity to object," the Tenth Circuit has forgone Rule 30's specific time requirements. *United States v. MacKay*, 491 F.2d 616, 621 (10th Cir. 1973).

Defendant contends that allowing the instruction to stand would be grounds for a mistrial because he was unfairly surprised and misled about the nature of the government's theory of culpability under 18 U.S.C. §2. In doing so, he relies on *Gaskins*, which involved a district court's decision to give a jury instruction after closing arguments while the jury was already deliberating. *Gaskins*, 849 F.2d at 460. Defendant argues that his closing arguments and presentation of the case writ large, like the *Gaskins* defendant, has been prejudicially affected. **Doc. 355**; *Id.* at 458 ("The object of the rule is to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury.").

Defendant's contention that he was substantially misled in preparing his case does not survive scrutiny. While it is true that the Tenth Circuit pattern instructions, an instruction which had been in every iteration of the jury instructions prior to March 18, focuses only on liability under 18 U.S.C. §2(a), every iteration of the indictment charges Defendant with violations under 18 U.S.C. §2, not either subsection. **Doc. 31 (Indictment); Doc. 146 (Superseding Indictment); Doc. 315 (Second Superseding Indictment)**. It stands to reason that Defendant could have inferred that the Government might intend to pursue a theory of liability under either section of the statute based on the charging language. That language, as the Government pointed out, has

5

been on the record for over two years. While the change was last minute, the Court cannot find that the Government misled Defendant when it pursued a subsection of a statute with which it charged Defendant over two years ago. The change in the jury instruction was reasonable to accurately reflect the full text of the charged statute. *See* Fed. R. Crim. P. 7 ("Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.").

Moreover, Defendant's case differs from *Gaskins* materially because unlike in *Gaskins*, the Government presented its request before the close of evidence and before closing arguments. The Court dismissed the jury for the day and delayed closing arguments to allow Defendant more time to prepare his closing arguments in light of Instruction 11. Defendant will also have the opportunity to argue against this theory to the jury in closings. He has had the opportunity to object. *Hall v. United States*, 378 F.2d 349, 350 (10th Cir. 1967). All of these distinguishing facts are more than sufficient to satisfy the Tenth Circuit's requirement that compliance with Rule 30 not unduly or unfairly prevent a defendant from making an argument to the jury. *United States v. Smith,* 629 F.2d 650, 653 (10th Cir.); *Whitlock*, 429 F.2d at 946. Whereas *Gaskins* contemplated the prejudicial effect of a jury instruction *after* deliberation had already begun, the instant case involves a much timelier change. *Gaskins*, 849 F.2d at 458.

The Court cannot conclude that Defendant has been materially prejudiced, even with the recentness of Instruction 11, where the Government has complied with Rule 30 and Defendant will have the opportunity to rebut the argument in closing.

    **II.**    **There was no unfair surprise or material variance from the indictment.**

Defendant argues that allowing in the §2(b) language would constitute a prohibited material variance from the indictment. **Doc. 355 at 3**; *United States v. Alexander*, 447 F.3d 1290,

6

1298 (10th Cir. 2006) (finding that "a constructive amendment occurs when the substance of the indictment is effectively altered. . . ."). As discussed above, 18 U.S.C. §2 has been in all of the versions of the indictment since the original was docketed in March of 2023. **Doc. 31**. The Government was not required to give notice of an aiding and abetting theory in any form, and what is more, the Government was not required to include theories of liability in the charging document. *Alexander*, 447 F.3d at 1298 ("Aiding and abetting, therefore, need not be alleged in the indictment.") (citing *United States v. Scroger,* 98 F.3d 1256, 1262 (10th Cir.1996) (holding that a defendant is put on notice that "when more than one person is involved in a criminal act, the district court may properly submit an aiding and abetting instruction to the jury, even though it was not charged in the indictment or presented at trial")); *United States v. Cueto,* 628 F.2d 1273, 1275–76 (10th Cir.1980) (noting that a defendant is not unfairly surprised or misled by an aiding and abetting instruction even when not charged in the indictment)). Including §2(b) language would not materially amend the indictment where the Government did not have to include it at all.

     However, because the Court has broad discretion to consider manifest injustice in deciding motions for mistrials, it is nevertheless prudent to discuss Defendant's additional concerns about manifest injustice by unfair surprise. Both the Tenth Circuit and sister circuits have upheld convictions where the indictment does not specifically charge a defendant with violations of §2(b) provided that a defendant had at least some notice of the possibility of the theory. *United States v. Montoya*, 716 F.2d 1340, 1343 n1. (10th Cir. 1983); *United States v. Catena*, 500 F.2d 1319, 1323 (3d Cir. 1974) ("While the indictment did not by its terms refer specifically to § 2(b), but rather referred only to § 287, this omission is not fatal."). The Tenth Circuit case on this issue involved an indictment that did not charge §2 at all, but rather only a violation of 18 U.S.C. §267, and included language alluding to an aiding and abetting theory. *Montoya*, 716 F.2d at 1343.

7

Here, on the other hand, the indictment specifically charged Defendant with violations of 18 U.S.C. § 2 rather than merely alluding to it. That is sufficient to distinguish this case from *Montoya*, and further conclude that there was no unfair surprise.

### III. There was no prosecutorial misconduct in any misleading of the Defendant.

Moreover, there has been no prosecutorial misconduct or other bad faith in misleading the Defendant necessitating a mistrial.

When a defendant believes that prosecutorial misconduct has occurred, they may move for a mistrial. *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996). In considering potential prosecutorial misconduct, a court must engage in a two-step process. *United States v. Caballero*, 277 F.3d 1235, 1247–48 (10th Cir. 2002). First, there must have been improper conduct. *Id.* Second, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial" before it will rise to the level of a due process violation. *Id.* The offending action must be placed in the context of the whole trial, and not viewed in isolation. *Id.*

Here, the Defendant accused the Government of acting in bad faith. For the sake of completeness, the Court finds it necessary to analyze potential misconduct in misleading the Defendant, even though motions for mistrials are materially different than objections based on misconduct. *United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir. 2002) ("We first note that this issue comes to us in the form of a motion for a mistrial, as opposed to an objection based on prosecutorial misconduct. . . [and] our precedent clearly distinguishes between them.").

When prosecutorial misconduct deprives a criminal defendant of a fair trial, the defendant's due process rights are violated. *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3108-09, 97 L.Ed.2d 618 (1987); *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996). However, as discussed at length above, Defendant did have fair notice of the possibility of a §2(b) theory

8

coming up at trial. The Government's request complied with the Federal Rules of Criminal Procedure. A timely, although inconvenient, request for an update to jury instructions in line with the charged language does not give rise to misconduct.

Moreover, whether a prosecutor acted in bad faith carries significant weight. *See e.g.*, 23A C.J.S. Criminal Procedure and Rights of Accused § 1726. However, the record tends not to indicate bad faith on behalf of the Government. Both parties proposed instructions on the same day, knowing the charge conference would be the next day. The Government explained that it overlooked that the Tenth Circuit Pattern Instruction omits § 2(b). While it is true that the Government could have (and frankly should have) spotted this oversight sooner, the Court does accept the Government's position that this was an oversight, not bad faith. *United States v. Dennison*, 891 F.2d 255, 258 (10th Cir. 1989) ("At the outset, the district court's characterization of the prosecutor's conduct as being the result of "bad faith" is simply not borne out by the record before us."). Sloppiness on the part of the Government does not automatically warrant the drastic remedy of a mistrial where the request was still within the bounds of the indictment and the Rules of Criminal Procedure. *United States v. Taylor*, 605 F.2d 1177, 1179 (10th Cir. 1979) (A mistrial is a "drastic remedy."); *United States v. Martinez*, 455 F.3d 1127, 1131 (10th Cir. 2006) (same).

The record does not support a finding of prosecutorial misconduct, even if the Defendant had raised it in his objection at the charge conference.

## CONCLUSION

Defendant's Verbal Motion for a Mistrial is **DENIED**.

**IT IS SO ORDERED.**

\_\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE