IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                  1:23-cr-00748-KWR

SOLOMON PEÑA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL FOR COUNTS 1 THROUGH 9 OF THE SECOND SUPERSEDING INDICTMENT

THIS MATTER comes before the Court upon Defendant's Motion for Judgment of Acquittal for Counts 1 Through 9 of the Second Superseding Indictment. **Doc. 371.** Having reviewed the pleadings and applicable law, this Court finds that Defendant's motion is not well taken and, therefore, **DENIED**.

### BACKGROUND

On May 24, 2023, Defendant Solomon Peña was indicted on numerous charges including, conspiracy, in violation of 18 USC § 371; interference with federally protected activities, in violation of 18 USC § 245(b)(1)(A); aiding and abetting, in violation of 18 USC § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 USC § 924(c)(1)(A)(iii); aiding and abetting, in violation of 18 USC § 2; using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of such crime, in violation of 18 USC §§ 924(c)(1)(A)(iii) and (B)(ii); and aiding and abetting, in violation of 18 USC § 2. **Doc. 33**. On March 26, 2024, in a superseding indictment, Defendant was further charged with felon in possession of a firearm and

1

ammunition, in violation of 18 USC § 922(g)(1) and 924; and solicitation to commit a crime of violence, in violation of 18 USC § 373. **Doc. 147**. On January 23, 2025, the Government filed a Second Superseding Indictment. **Doc. 314.** The indictment included no new charges and was substantially similar to the first superseding indictment. *Id.* The new indictment includes the allegations that the November 2020, 2022, and 2024 elections in Bernalillo County were mixed elections for both state and federal candidates. **Doc. 314;** *see also* **Doc. 316-1** (redline version of second superseding indictment).

On March 19, 2025, a jury convicted Defendant on all counts. **Doc. 365** (jury verdict). Defendant filed a motion for a judgment of acquittal on April 9, 2025. **Doc. 371**. Defendant raises several arguments that closely parallel his motion to dismiss, **doc. 274**, in which he argued that interfering with a federal election is not a violent crime, and that the federal election interference statute is unconstitutional for several reasons, both facially and as applied to Defendant. *Id.* The Court denied Defendant's Motion to Dismiss, finding that Defendant's arguments failed because the Government properly interpreted interference in a federal election as a violent predicate act, and the federal election interference statute is constitutional, both facially and as applied to Defendant, who interfered with more than merely a state or local election. **Doc. 337.**

Defendant now renews these arguments in his Motion based on the evidence that the Court admitted at trial. He first argues again that the Elections Clause does not authorize Section 245(b)(1)(A) prosecutions for purely local elections, and that the evidence at trial demonstrated that Defendant only attempted to interfere with candidates for purely local elections. **Doc. 371 at 2–3**. Similarly, Defendant argues that the Commerce Clause does not authorize Section 245(b)(1)(A) prosecutions of this kind because the evidence at trial demonstrated that Defendant's actions began only after elections had finished, and that at least three elected officials had not

testified to interacting with the federal government in their election position. *Id.* **at 3–4.** Defendant also argues that there was not sufficient evidence that Senator Lopez or Representative Martinez were targeted because of their status as elected officials or candidates. *Id.* **at 11**. The Government filed its Response on May 9, 2025. **Doc. 377**. Defendant did not file a reply. D.N.M.-LR 47.8 ("A reply must be served within fourteen (14) days after service of the response). The Court therefore considers only Defendant's original motion for partial acquittal and the Government's reply below.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 requires that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In ruling on a Rule 29 motion for acquittal, the Court, viewing the evidence most favorably to the Government, must determine whether a rational jury could have found the elements of the offense to have been proven beyond a reasonable doubt. Courts must give "considerable deference to the jury's verdict." *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). Evidence supporting that conviction must do more than raise mere suspicion of guilt. *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999). A court must uphold a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001). The Court must therefore "determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallos*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)). In doing so, the court should not weigh evidence or consider witnesses' credibility. *See Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Judgment of acquittal is only proper if the evidence is "so meager that

no reasonable jury could find guilt beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982); *see also United States v. Wahhaj*, No. 18-CR-2945-WJ, 2024 WL 663524, at *2 (D.N.M. Feb. 16, 2024).

## ANALYSIS

Defendant makes several constitutional arguments, renewed in part from his Motion to Dismiss, **doc. 297**. Defendant argues first that neither the Elections Clause nor the Commerce Clause authorize his prosecution because the evidence at trial demonstrated that he interfered only with a local election. **Doc. 371 at 2–4**. In doing so, Defendant argues that the inclusion of federal candidates in the election at issue does not make this case inherently federal. *Id.* **at 8**. Finally, in the only wholly new argument, Defendant argues that there was not sufficient evidence that Senator Lopez or Representative Martinez were targeted because of their status as elected officials or candidates. *Id.* **at 11**.

Defendant seeks acquittal on Counts 1 through 5, which deal with interference of federally protected activities or conspiracy to interfere with federally protected activities. **Doc. 371 at 2**. He also seeks acquittal on Counts 6 through 9, but on the grounds that acquittal for Counts 1 through 5 necessitates acquittal for Counts 6 through 9. *Id.* **at n. 1.** Counts 6 through 9 involve carrying a firearm during and in relation to federal crimes, for which Section 245(b)(1)(A) serves as a predicate felony. The Court therefore considers only considers Counts 1 through 5 in its sufficiency of the evidence inquiry.

I. **Defendant's constitutional challenges are unavailing.**

When construed as as-applied sufficiency of the evidence challenges and viewing the evidence in the light most favorable to the Government, Defendant's constitutional challenges do not surmount the high bar necessary for acquittal.

> A. *The Court will construe Defendant's constitutional arguments as sufficiency of the evidence challenges.*

Defendant uses his Rule 29 motion to relitigate arguments he made in his motion to dismiss. Specifically, Defendant seems to try to reargue that Section 245(b)(1)(A) is unconstitutional, both facially and as applied to his prosecution, and that the Government thus lacked jurisdiction to prosecute him for Counts 1 through 5. The constitutionality of a statute is a question of law for the court to address, whereas questions under Rule 29 involve examining questions of fact presented to the jury. *See* Fed. R. Crim. P. 29.

The Tenth Circuit has allowed certain as-applied challenges to operate as sufficiency-of-the-evidence questions. *United States v. Garcia*, 74 F.4th 1073, 1092 (10th Cir.) (citing *United States v. Crenshaw*, 359 F.3d 977, 984 (8th Cir. 2004) ("We first note that the 'as applied' constitutional challenge raised by McGruder and Johnson is really not a constitutional objection at all, but is a challenge to the sufficiency of the evidence supporting the jury verdict.")). However, both the Tenth and Eighth Circuits have only considered these modified as-applied challenges in the context where there is an express jurisdictional element before the jury. *Garcia*, 74 F.4th at 1092 (Discussing federal racketeering law, which expressly requires that the scheme be in furtherance of interstate commerce); *Crenshaw*, 359 F.3d at 984 ("The defendants argue that, even if the statute is facially constitutional, this particular application of the statute is unconstitutional because there was not proof of a sufficient connection between the murder and interstate commerce. However, the connection to interstate commerce *was explicitly presented to the jury as one of the elements in the government's case*." (emphasis added)). To prove its case, the government had to demonstrate that it retained jurisdiction, meaning that the prosecution was constitutional. This would suggest that in the Rule 29 context, jurisdiction needs to be expressly before the jury to properly create a Rule 29 sufficiency of the evidence question.

However, unlike the statutes at issue in *Garcia* and *Crenshaw*, 18 U.S.C. § 245 does not expressly require that the government prove jurisdiction, meaning the jury never evaluated whether the Government had jurisdiction over Defendant. Section 245(b)(1)(A) requires that the Government prove that Defendant:

(1) Acted by force or threat of force;
(2) Willfully intimidated or interfered with another person;
(3) Acted because:
    a. the victim was or had been a legally authorized election official; OR
    b. the victim qualified and campaigned as a candidate for elective office or acted in order to intimidate the victim from campaigning as a candidate for elective office in any general election.
(4) The election was mixed in that candidate were elected to federal and state offices; and
(5) Used a dangerous weapon.

18 U.S.C.A. § 245(b)(1)(A); **Doc. 359 at 19–20** (jury instructions). The statutory language, unlike the limited guiding precedent, has no jurisdictional element for the jury to evaluate. And Rule 29 concerns itself with whether the evidence presented to the jury was sufficient to satisfy each element of the crime and thus sustain a conviction. *See* Fed. R. Crim. P. 29(a); *Vallos*, 238 F.3d at 1247 (The Court must "determine whether the evidence, if believed, would establish each element of the crime.") (quoting *Evans*, 42 F.3d at 589)).

Defendant does not challenge the elements of the crime presented to the jury; he challenges jurisdiction, which was not before the jury, and not an element within the language of the statute. Specifically, Defendant argues that the Government did not have jurisdiction to prosecute him because the evidence did not comport with the Elections Clause or the Commerce Clause. There is no case law within the Tenth Circuit discussing Section 245, much less Section 245(b)(1)(A), in the context of a Rule 29 motion, and Defendant provides no case law to support his request.[1] The

---

[1] This District's Local Rules provide that "A motion, response or reply must cite authority in support of the legal positions advanced." D.N.M.-LR-Crim. 7.3(a). Defendant provides no authority to support construing his

6

language of Section 245(b)(1)(A) suggests that it is sufficiently distinguishable from statutes with an express constitutional jurisdictional element (usually involving an effect on interstate commerce), meaning the Court could likely reject Defendant's arguments outright because they are outside the scope of a Rule 29 inquiry.

However, at least one federal court has considered (and rejected) an as-applied challenge to a different provision of Section 245(b), despite the lack of clear jurisdictional element considered in the limited Tenth Circuit precedent available. *See United States v. Maybee*, No. 11-30006, 2011 WL 2784446, at *2 (W.D. Ark. July 15, 2011), *aff'd,* 687 F.3d 1026 (8th Cir. 2012) (considering an as-applied challenge of a verdict under Section 245(b)).  The Court will therefore proceed with Defendant's constitutional challenges and find them once again without merit.

### B. Defendant's conduct is within the bounds of the Elections Clause.

First, there was sufficient evidence to demonstrate that Defendant interfered with a federally protected activity over which the Government retained jurisdiction to prosecute.

Defendant contends that the Elections Clause only allows Congress to prosecute criminal activity that interferes with the election process, and that Defendant did not interfere with an election. **Doc. 371 at 2.**  Rather, it is Defendant's contention that the election was over, so the fact that he retaliated against elected officials is of no moment and Counts 1 through 5 were outside of the Government's jurisdiction. *Id.*

Defendant is incorrect.  The Elections Clause provides that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; *but the Congress may at any time by Law make or alter such Regulations*, except as to the places of choosing Senators." U.S. Const. art. I, §4, cl. 1 (emphasis added).  It is

---

constitutional challenges as sufficiency-of-the-evidence challenge, and indeed provides this Court with no case law to support his Elections Clause argument at all.

a longstanding tradition that Congress may step in to regulate elections where necessary. *See e.g.*, *Cook v. Gralike*, 531 U.S. 510, 522–23 (2001) ("[T]he Constitution delegated to the States the power to regulate the 'Times, Places and Manner of holding Elections for Senators and Representatives,' subject to a grant of authority to Congress to 'make or alter such Regulations.'"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801–02 (1995); *Rucho v. Common Cause*, 588 U.S. 684, 685 (2019); *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) ("The text makes equally clear, however, that Congress can step in, either making its own regulations that wholly displace state regulations or else modifying existing state regulations."). This includes mixed elections. *Anderson v. United States*, 417 U.S. 211, 225 (1974); *United States v. McCranie*, 169 F.3d 723, 727 (11th Cir. 1999); *United States v. Bowman*, 636 F.2d 1003, 1010 (5th Cir. 1981). Permissible regulations include those that seek to "prevent violence, fraud, and corruption." *Bowman,* 636 F.3d at 1009.

That Defendant acted after the close of voting is irrelevant. The Supreme Court has found that the times, places, and manner of holding elections involves more than just the election that takes place on Election Day itself:

> It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, *prevention of fraud and corrupt practices*, *counting of votes*, duties of inspectors and canvassers, and *making and publication of election returns*; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

*Smiley v. Holm*, 285 U.S. 355, 366 (1932) (emphasis added).

As the Second Circuit has pointed out, the Elections Clause allows Congress to punish conduct that would interfere with future elections. *United States v. Smilowitz*, 974 F.3d 155, 160 (2d Cir. 2020) (finding the Elections Clause authorizes prosecution for interfering in New York's voter registration process because "the registrations here cover future federal elections.").

8

Defendant's unsupported argument that the Elections Clause does not authorize this prosecution because Defendant acted after Election Day is without merit.

A reasonable jury could have concluded based on the evidence at trial that Defendant interfered with the electoral process as laid out in *Smiley*. A conviction under Section 245(b)(1)(A) does not require a victim to be a candidate or election official in an ongoing federal or mixed election. It also prohibits using force or forceful threats against someone who "has been" a candidate or elections official in such an election or "to intimidate" them from serving as a future a candidate or election official in such an election. 18 U.S.C. § 245(b)(1)(A). The jury heard evidence that Defendant's four victims had served as candidates or election officials in the mixed federal-state elections of 2020 and 2022 (or might serve in those capacities in 2024). Bernalillo County Commissioner Adriann Barboa and former Commissioner (now State Senator) Debbie O'Malley testified that they served as authorized election officials in relation to the 2022 general election, in which both federal and state offices were decided. Senator Linda Lopez testified that she campaigned in the 2020 general election and the 2024 general election, and that federal and state candidates were on the same ballot in those elections. Viewing that testimony in the light most favorable to the Government, a reasonable jury could find that Defendant's conduct, even if it took place after the certification of the 2022 election, still interfered with elections within Congress's authority to regulate.

Defendant's Elections Clause argument, which he does not support with authority, is without merit. The Elections Clause authorized Defendant's prosecution.

      C. *The Government properly demonstrated that Defendant interfered with an election of mixed character, which this Court has already held affects interstate commerce.*

Defendant's Commerce Clause arguments are similarly without merit. To the extent that the Government was required to prove a link to interstate commerce, the evidence at trial showed that Defendant interfered in an election of mixed character. The Court has already found that the regulation of elections of mixed character is rationally related to interstate commerce.

Defendant attempts to create a distinction between the Court's ruling on the constitutionality of the regulation of mixed elections and the conduct that came out at trial. Defendant argues that the evidence at trial showed that the election had passed, and the votes were already certified, meaning the question before the Court is not whether an intrastate election affects interstate commerce, but whether local elected officials that were candidates in local elections have a substantial effect on interstate commerce. But Section 245(b)(1)(A) punishes more than just interference with the election itself. It prohibits attempting to interfere with anyone "voting or qualifying to vote, *qualifying or campaigning as a candidate for elective office*, or qualifying or acting as a poll watcher, or any *legally authorized election official*, in any primary, special, or general election." 18 U.S.C. §245(b)(1)(A) (emphasis added). It proscribes conduct that does not solely take place on election day—acting as an election official, for example, includes duties that extend beyond the day of the election. This includes interference that would inhibit the certification of a current election, or change the outcome of future elections, as Defendant intended to do. *C.f. Smiley*, 285 U.S. at 366 (Considering the Elections Clause to protect the entire electoral process). In other words, it prohibits interfering with the process of administering mixed elections.

To the extent it is necessary to repeat an analysis of a question of law in a Rule 29 motion, the Court has already decided that mixed elections and the process of administering them affect

interstate commerce. The Supreme Court has declined "to decide whether a conspiracy to cast false votes for candidates for state or local office, as opposed to candidates for federal office, is unlawful." *Anderson v. United States*, 417 U.S. 211, 228 (1974). The same principles apply to other forms of election interference where the election involves both federal and state or local candidates. The *Anderson* court wrote that a "single conspiracy may have several purposes, but if one of them—whether primary or secondary—be the violation of a federal law, the conspiracy is unlawful under federal law." *Id.* at 226. The fact that the "primary motive was to affect the result in the local rather than the federal election has no significance. . . ." *Id.* at 212. "That [Defendant] may have had no purpose to change the outcome of the *federal* election is irrelevant." *Id.* at 226 (emphasis added). All that matters is that "the integrity of a mixed federal-state election is marred by fraudulent voting activities, even if these activities are only directed toward the state elections." *United States v. McCranie*, 169 F.3d 723, 727 (11th Cir. 1999).

That a mixed character election took place is all that the Government had to prove. As discussed above, Defendant attempts to create an interstate commerce requirement as an element of the crime where none exists. *See supra* at Section I.A. Interference in an election of mixed character injures the rights of *all* voters, including those in the federal election over which the United States retains jurisdiction. There is a rational connection between protecting the rights of all voters and interstate commerce, which the Court discussed at length in its order on Defendant's Motion to Dismiss. **Doc. 337 at Section III.a.*i*.** But the Government did not need to specifically prove that the election affected interstate commerce as an element of the crime, only that Defendant interfered with an election of mixed character, which the Court has already held that Congress can regulate within its Commerce Clause authority. Nor, as Defendant suggests, did the Government

11

have to prove intent to interfere with a *federal* election specifically. *See* 18 U.S.C. §245(b)(1)(A) (requiring intent to interfere with a federally protected activity, not specifically a federal election).

A reasonable jury could have found that (1) Defendant interfered with the electoral process when he attempted to interfere with candidates and election officials involved in the 2022 election process *and* intimidate candidates from running in future elections and (2) that the process in which he interfered was an election of mixed character, making it a federally protected activity.

The jury heard testimony that Defendant hired Demetrio Trujillo and Jose Louise Trujillo to attack the homes of various elected officials who Defendant perceived to be involved in an oligarchal takeover of the United States. The jury also heard testimony that Defendant took credit for perceived political adversaries deciding not to run for office. *See* **Doc. 377-3.** The Government presented texts between Defendant and Candidate 1, a political ally, discussing how "we have to keep contending," "give me liberty or give me death," **Doc. 377-4**, "they will eventually break," **Doc. 377-5** (text messages introduced as Trial Exhibit 28), "we have to press the attack," and "never give up," **Doc. 377-6** (text messages introduced as Trial Exhibit 48). The jury also heard that the correspondence culminated with Defendant texting to Candidate 1, "We can't just sit around being angry. We have to act," only a few hours before Defendant orchestrated the first shooting and only a few days before the shooting at Representative Martinez's house. **Doc. 377-7** (text messages introduced as Trial Exhibit 64). Given that the jury also received physical evidence and testimony that (1) Defendant's co-conspirators conducted the shootings, (2) that they did so at his direction, and (3) that the shootings took place just days after a litany of text messages about election interference and overthrowing elections, a reasonable jury could have found that Defendant attempted to interfere with the outcome of the 2022 election and elections to come.

Additionally, and supporting Defendant's artificially constructed intent requirement, the jury heard evidence about Defendant's dissatisfaction with the electoral process at large, including federal elections. The jury received Trial Exhibit 61, in which Defendant described a conversation he had with co-defendant Jose Trujillo: "That 21 year young youngster I was using, I was explaining the oligarch takeover of the USA to him, and at the end I said that we literally are revolutionaries. He got all hyped up and said "Yeah, yeah, yeah, we're revolutionaries!'" **Doc. 377-1**. As the Government points out, a reasonable jury could find that this demonstrates Defendant intended to act in a revolutionary capacity against opponents who had taken over both state and federal offices. Similarly, the jury saw evidence of Defendant's discussion about uniting and overthrowing oligarchs:

> Trump stopped the "ultimate collapse" of our Country referenced here, by stopping the oligarchs from having an unrestrained accumulation of money-capital. He stopped them because that unrestrained accumulation will result in suicide for the USA and all of our working class people. So they all united in a fury, and overthrew him. It is our duty as Statesmen and Patriots, to stop the oligarchs from taking over our Country

**Doc. 377-2.**

A reasonable juror could find that Defendant viewed his loss as example of a nationwide electoral conspiracy by oligarchs and demonstrated a desire to press the attack—that is, attack those who he believed to have played a role in depriving him of electoral victory or otherwise contributing to the supposed conspiracy. The outcome and conduct of federal races would thus be part of his motivation.

The question about whether Defendant attempted to interfere with a mixed election is much simpler. The jury heard testimony that there were both federal and state candidates on the ballot and involved in the 2022 general election. That is all that is necessary to make an election an election of mixed character. *See Anderson*, 417 U.S. at 225–26 ("In our view, petitioners err in

13

seeking to attach significance to the fact that the primary motive behind their conspiracy was to affect the result in the local rather than the federal election."); *United States v. Malmay*, 671 F.2d 869, 874 (5th Cir. 1982) ("The fact that local and federal elections are held at the same time in no way deprives Congress of the right to enact legislation affecting the federal election . . . and the courts have not historically deemed a specific intent to affect the federal election to be necessary (where the statute involved sought to protect the federal elective process)."); *United States v. Cole,* 41 F.3d 303, 307 (7th Cir. 1994) (Finding that federal jurisdiction is satisfied so long as a single federal candidate is on the ballot.); *Bowman*, 636 F.2d at 1010 ("It is equally clear that the fact that a state decides to hold its elections on the same day as federal elections does not deprive Congress of the right to legislate on matters affecting the federal races.").

Defendant attempts to create an interstate commerce element to a § 245(b)(1)(A) prosecution where none exists. Defendant then attempts to demonstrate that the Government failed to satisfy that implicit jurisdictional requirement. However, Congress was within its Commerce Clause authority to punish interference with mixed elections and the administration thereof, and a reasonable jury could have found that Defendant did precisely that. Thus, Defendant's Commerce Clause challenge fails.

## II. Defendant's sufficiency of the evidence arguments fail.

Finally, Defendant challenges the sufficiency of the evidence the Government presented as to the counts involving Senator Linda Lopez and Representative Javier Martinez. Defendant argues there is not sufficient evidence that he targeted Senator Lopez or Representative Martinez because they were elected officials or candidates for public office. However, viewing the evidence in the light most favorable to the Government, a reasonable jury could conclude otherwise.

> A. *There was sufficient evidence that Defendant targeted Senator Lopez because of her position as a state senator.*

14

First, there was sufficient evidence for as reasonable jury to conclude that Defendant targeted State Senator Linda Lopez because of her elected office and potential to campaign for office again in the future.

Defendant contends that Senator Lopez was not a candidate in the 2022 election and there was no other circumstantial evidence that Defendant believed Senator Lopez played a role in the 2022 election process. **Doc. 371 at 11–12.** He contends that all the evidence pointed to Defendant's intent to specifically disrupt the 2022 election process, not future elections. This includes evidence that Defendant asked County Commissioners to not certify the election, but did not speak to Senator Lopez in any capacity. Nor did either Demetrio or Jose Trujillo testify that they shot at Senator Lopez's house because she was an elected official.

However, Defendant ignores additional circumstantial evidence that would show he intended to interfere with the electoral process, including preventing political adversaries and those with differing politics from running for elected office. Evidence regarding a defendant's state of mind is necessarily circumstantial, and a jury must infer intent from a defendant's words and actions. The Tenth Circuit has routinely held that convictions based upon circumstantial evidence are sound. *United States v. Downen*, 496 F.2d 314, 318 (10th Cir. 1974) (citing *United States v. Brown*, 446 F.2d 1119 (10th Cir. 1971); *Myers v. United States*, 415 F.2d 318 (10th Cir. 1969)). It has also routinely upheld convictions based on uncorroborated informant testimony. *Id.* (citing *United States v. Owens*, 460 F.2d 268 (10th Cir. 1972); *Johns v. United States*, 227 F.2d 374 (10th Cir. 1955); *Todd v. United States*, 345 F.2d 299 (10th Cir. 1965)).

The Government offered testimony and physical evidence that would, in its circumstantial capacity, allow a reasonable jury to infer that Defendant intended to interfere with elections by intimidating those who would campaign in the future. The jury heard testimony from Confidential

15

Witness 1 ("CW1"), who was incarcerated at Cibola County Correction Center with Defendant in June, 2023. **Doc. 377 at 15**. CW1 offered testimony about Defendant specifically attempting to disrupt the 2022 elections. However, CW1 also testified that Defendant told CW1 that he wanted to more broadly intimidate politicians from seeking election or reelection. Specifically, Defendant pointed to an article admitted into evidence from the Albuquerque Journal about Senator Mark Moore's foregoing reelection. **Doc. 377-3**. According to CW1, Defendant presented the article to CW1 as evidence of his success in his broader election interference scheme. Defendant allegedly took credit for the decision, saying something along the lines of, "we did this, now they know that we will hold them accountable." **Doc. 377 at 16**. A reasonable jury could conclude Defendant's statements meant that he had conducted the shootings to intimidate opposing politicians from campaigning for election in the future, a violation of Section 245(b)(1)(A).

Moreover, the Government introduced evidence that Defendant was able to attack Senator Lopez's home because he found her address on the New Mexico State Legislature's website. **Doc. 377-9** (cell phone extraction and Senator Lopez's webpage). As the Government points out, Senator Lopez's salient feature to Defendant is that she is an elected official, and one with whom he politically disagrees. **Doc. 377 at 16**. This, combined with CW1's testimony about Defendant's general intent to intimidate politicians from running for reelection, would allow a reasonable jury to conclude that Defendant intended to intimidate Senator Lopez because of her elected position.

Finally, the fact that Senator Lopez ultimately decided to run for reelection in 2024 is irrelevant in the eyes of Section 245(b)(1)(A), despite Defendant's contentions. A forceful attempt to intimidate someone from campaigning as a candidate for elective office is all that is necessary to sustain conviction. 18 U.S.C. §241(b)(1)(A). The jury received plenty of evidence that

Defendant either conspired with his co-conspirators to use force or actually used force to attempt to intimidate Senator Lopez from running for election.

The evidence received at trial is sufficient for a reasonable jury to have found that Defendant acted against Senator Lopez because of her position as an elected official.

> B. *There was sufficient evidence that Defendant targeted Representative Martinez because of his position as a state representative and because he campaigned against Defendant's political ally.*

Likewise, a reasonable jury could have concluded that Defendant targeted Representative Martinez because of his status as an elected official.

Defendant similarly contends that there was not sufficient evidence introduced at trial to find that Representative Martinez was targeted because of his status as an elected official or candidate for public office. Representative Martinez did not testify at trial; his wife did. Nor was Representative Martinez home at the time of the shooting. Defendant also contends that while there was evidence that Representative Martinez was a candidate in 2022 and defeated the Republican candidate, Lisa Meyer-Hagen (appearing as Candidate 1 in the indictment and other court documents), there was no evidence that Defendant targeted Representative Martinez because he won that election.

Here again the circumstantial evidence is such that a reasonable jury could conclude otherwise. First, as discussed *supra*, Defendant demonstrated a general intent to interfere with the campaigns of those with whom he politically disagreed. CW1 testified that Defendant took credit for politicians choosing not to run for reelection and that Defendant wanted to hold politicians accountable. The Government also introduced texts that Defendant wanted to "press the attack" against his and his allies' political opponents and that he considered it his duty to stop oligarchs from taking over the United States as a whole. **Doc. 377-6; Doc. 377-2 at 3.** Defendant's

17

demonstrated use of force combined with his desire to strike fear in elected officials, and his delight when he seemingly succeeded, could lead a reasonable jury to conclude that he willfully and forcefully attempted to intimidate Representative Martinez from campaigning for reelection.

More importantly, the Government introduced evidence that Defendant had a personal stake in the outcome of Representative Martinez's election because Candidate 1, a political ally, had run against Representative Martinez. Defendant argues that there was only "a text message between [Defendant] and [Candidate 1] that expressed shock that [Candidate 1] lost her race for the State House." **Doc. 371 at 13**. However, the Government introduced a series of text messages between Defendant and Candidate 1 in which they discussed how they believed their respective elections had been rigged and that they had to force officials to come to the same conclusion. *See e.g.* **Doc. 377-4**. The texts included statements about how they "have to keep contending," and how their opposition "will eventually break. **Doc. 377-4; Doc. 377-5**. They discussed how they "have to press the attack" and "never give up" in their fight against an apparent nation-wide conspiracy to rig elections. **Doc. 377-6.** And just a few hours before the first shooting at Representative Martinez's house, Defendant texted Candidate 1 that "[w]e can't just sit around being angry. We have to act." **Doc. 377-7**. This, in conjunction with CW1's testimony about Defendant's general goal of broader election interference, would allow a reasonable jury to conclude that Defendant specifically sought to intimidate Representative Martinez from running for office again.

Finally, Defendant contends that the attack could not amount to an attempt because the trial evidence showed that Representative Martinez was out of state on December 8, 2022, when Defendant carried out the shooting at his house. However, that Defendant attacked when Representative Martinez was not home nonetheless demonstrates an attempt to intimidate him.

Representative Martinez's wife testified that she and their children were in the house at the time of the attack. Evidence showed that there were cars parked outside the house, suggesting that there were people, including potentially Representative Martinez, at home. **Doc. 377-8** (screen grab from video introduced as Trial Exhibit 79).

Section 245(b)(1)(A) does not require that the use of force be aimed specifically at the victim's person, only that the perpetrator willfully use force to attempt to intimidate. *See* 18 U.S.C. § 245(b)(1)(A). Having one's house shot at is intimidating, regardless of if one was in the house at the time. Moreover, Representative Martinez's family was home—finding out they were at risk similarly serves to intimidate. The litany of text messages and CW1's testimony could lead a reasonable jury to conclude that Defendant targeted Representative Martinez because he had campaigned against Candidate 1 and to intimidate Representative Martinez from campaigning against Candidate 1 in the future. That Representative Martinez was not actually in the house at the time of the shooting is irrelevant in the context of Defendant's attempt.

The evidence received at trial is sufficient for a reasonable jury to have found that Defendant acted against Representative Martinez because of his position as an elected official and because he campaigned against Defendant's political ally.

## CONCLUSION

Defendant's arguments that the evidence presented at trial was deficient are without merit for several reasons. Defendant's Motion for Acquittal (**Doc. 371**) is **DENIED**.

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE